GARDEN CONSTRUCTION CO., Inc.

v.

The UNITED STATES.

No. 272–66.

United States Court of Claims.

March 20, 1970.

Robert L. Sullivan, Jr., Baltimore, Md., attorney of record, for plaintiff. John A. Pryor, Baltimore, Md., of counsel.

Herbert Pittle, Washington, D.C., with whom was Asst. Atty. Gen., Shiro Kashiwa, for defendant.

Before COWEN, Chief Judge, LARA-MORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

PER CURIAM:

This case was referred to Trial Commissioner Saul Richard Gamer with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 134(h). The commissioner has done so in an opinion and report filed on November 28, 1969. Plaintiff filed a notice of intention to except on December 29, 1969 but has filed no exceptions or brief to this report and the time for so filing pursuant to the rules of the court has expired. The case has been submitted to the court pursuant to the provisions of Rule 143(d) without oral argument. Since the court agrees with the commissioner's opinion, findings and recommended conclusion of law, as here-

inafter set forth, it hereby adopts the same as the basis for its judgment in this case. Therefore, plaintiff is not entitled to recover and the petition is dismissed.

## OPINION OF COMMISSIONER

GAMER, Commissioner:

Plaintiff alleges that defendant caused water to accumulate on land which adjoined plaintiff's property, creating a condition plaintiff was required to correct in a manner which necessitated the incurrence of certain expenses and resulted in a diminution in value of part of plaintiff's property. Plaintiff contends that defendant's acts in creating such water condition constituted a taking of plaintiff's property entitling it to just compensation in the amount of such expenses and diminution.

The pertinent facts are as follows:

In 1955 defendant purchased from plaintiff fifty acres of land in Baltimore County, Maryland, on which defendant erected a Social Security Administration building. Plaintiff also dedicated to Baltimore County a 120-foot strip of land for a dual four-lane highway, called Security Boulevard, which fronted on the north side of such Government property. Plaintiff retains ownership of the land on the north side of the highway.

Defendant constructed its building before Security Boulevard was completed by Baltimore County. In connection with the development of its property, defendant installed thereon a large drainage pipe. In accordance with plans then approved by Baltimore County for a drainage system covering defendant's property, as well as Security Boulevard and additional property of plaintiff lying to the west of defendant's property, defendant's drainage pipe extended into the bed of the proposed Security Boulevard. Under such plans, the water discharged from such pipe would be emptied into a stream called Little Dead Run, which, by proposed diversion by plaintiff over its property located west of the Social Security site, would flow in a northerly direction under Security Boulevard at a point only a short distance from defendant's pipe.

However, in 1957, defendant, requiring further acreage for the development of its Social Security Administration site, took from plaintiff by eminent domain 31 acres adjoining the original fifty acres, including the part of plaintiff's property upon which it had intended to divert Little Dead Run. It thus became necessary for Baltimore County to dispose of the water being discharged from defendant's drainage pipe in some other way. A temporary method of carrying it through a drainage ditch a greater distance to the west, where Little Dead Run flowed in its natural course, was unsatisfactory because the grade differential was too slight to carry the water away effectively. Consequently, the water was accumulating in the bed of the proposed highway. Actually, the quantity of water that was discharging into the bed from defendant's pipe was greater (by approximately one-sixth) than the amount that would have resulted from the natural drainage of the site in its original condition because, as part of its construction plan, defendant had, by changing the topography of the site and by installing a pipe system thereon, diverted the drainage from approximately eight acres on the east of the site, which would naturally have drained away from the road, to the large drainage pipe on the west.

Since the original plan for the disposition of the water could not be carried out, Baltimore County concluded that the only remaining feasible method therefor was to carry the water, by pipes leading from defendant's drainage pipe, under the proposed Security Boulevard and across plaintiff's property to the north through a drainage ditch to a point where Little Dead Run ran in its natural course. Plaintiff was developing an industrial park on such property adjoining the proposed road, all of which property lay in Baltimore County, and was responsible for providing such drainage systems thereon as the county

would require. Accordingly, the county required plaintiff to grant to the county an easement over plaintiff's property from the proposed road to the stream, and to pipe the water from the roadbed into the drainage ditch which would lie in the easement. This plan was carried out. On June 9, 1960, plaintiff granted the easement to Baltimore County, and on August 9, 1960, the county let a construction contract for Security Boulevard, the plan for which called for the installation by plaintiff of the described pipe system in the bed of the road.

The bisecting by the easement of the portion of plaintiff's property over which it ran interfered with the best use that otherwise could have been made of such property because buildings could not feasibly be erected over the drainage ditch. Thus the market value of such property was diminished. Attributing such diminution, as well as the cost of the piping which it incurred in carrying the water from defendant's pipe to the drainage ditch, to defendant's actions causing the water accumulation, plaintiff here seeks to recover such piping costs and the amount of the diminution in property value. Plaintiff contends that defendant's acts causing such water accumulation amounted to a taking of its property entitling it to just compensation in the amount of the described damages. Such damages, plaintiff says, accrued on August 9, 1950, when the plan for the new drainage system became firm by the letting by the county of the contract for the construction of Security Boulevard.

■ Defendant raises a threshold question. It contends that a consideration of the merits of at least a part of plaintiff's claim is precluded by the doctrine of res judicata. The contention is based upon the fact that in the proceedings relating to the taking by defendant of plaintiff's 31 acres, plaintiff included in its claim for just compensation certain costs it incurred, including the same piping costs as are herein involved, which resulted from the same water accumulation problem as is the basis of the instant action, and that no recovery was allowed thereon. However, this portion of plaintiff's claim was denied only because the District Court held it to be no proper part of the proceedings relating to the 31 acres. The court pointed out that, instead, it was based on defendant's actions relating to the fifty acres which defendant had earlier purchased from plaintiff. Accordingly, without deciding whether plaintiff might possibly have some other recourse against defendant for the damages it suffered because of the water accumulation, such as a claim under the Federal Tort Claims Act or under the sales contract covering the fifty acres, the court denied the claim but "without prejudice to any claim defendant [plaintiff herein] may have therefor in some other proceeding." Under these circumstances, it is plain that plaintiff is not prevented by the District Court proceeding and judgment from bringing such claim to this court. The doctrine of res judicata precludes only the relitigation of claims that have already been (or could have been) decided in a prior proceeding.

■ Furthermore, the District Court was clearly correct in holding that the water accumulation problem allegedly growing out of defendant's actions with respect to the fifty acres formed no proper part of the suit to determine just compensation for the taking of the 31 acres. Plaintiff is here claiming that in the construction of defendant's drainage system for the original 50-acre tract purchased from plaintiff, defendant acted in a manner (changing the site's natural topography and constructing the drainage pipe at an elevation too low to permit proper natural drainage to the west) which constituted another and separate taking. Such a cause of action is certainly different from that involved in the condemnation case, which was only concerned with the amount of just compensation for the 31 acres. "To constitute *res judicata*, it is elementary that there must be identity of cause between the two cases." Friend v. Talcott, 228

U.S. 27, 40, 33 S.Ct. 505, 508, 57 L.Ed. 718 (1913). And this conclusion is not affected by the fact that plaintiff, in the condemnation proceeding, made certain claims for damages grounded upon the frustration of its original plans to divert Little Dead Run and that in this case plaintiff also points out that the claimed damages resulting from the water accumulation problem would not have occurred had defendant not taken the 31 acres (or the particular part thereof upon which the diversion plan was based) and thereby frustrated such diversion plan.[1] The separate taking claim herein involved stands on its own regardless of the fact that in both cases plaintiff traces its troubles, in whole or in part, to the frustration of its diversion plan.[2]

■ On the merits, however, it is not possible to conclude that the matters about which plaintiff complains constituted a taking of its property by defendant. As shown, it was Baltimore County that required the installation by plaintiff of the pipes in the bed of Security Boulevard and the grant of the easement to the county.

None of the water from defendant's pipe encroached upon plaintiff's land.

Thus, this is not an action for a taking caused by a flooding or the discharge by defendant of water in a channel, resulting in the acquisition of a flowage easement, over any of plaintiff's property. Indeed, there was no physical invasion of any kind by defendant of any part of plaintiff's property such as is usually associated with a taking. See Eyherabide v. United States, 345 F.2d 565, 170 Ct.Cl. 598 (1965), and cases cited therein. The water accumulation was all in the bed of the road to which the county had title (through dedication by plaintiff) and over which it exercised jurisdiction. It thus became in effect county water. That the county, under its powers (about which there is no dispute), compelled plaintiff, under its industrial park development obligations, to solve the road drainage problem in a certain way, can hardly constitute a "taking" of plaintiff's property by defendant.

All of defendant's actions about which plaintiff complains were in accordance with plans that were duly approved by Baltimore County. Both plaintiff and defendant were required to submit to the county fully detailed plans for the drainage of their respective areas prior to the commencement of construction so that the county could insure an integrat-

---

1. In the condemnation suit plaintiff claimed "severance" damages for the alleged diminished value of a certain part of plaintiff's property north of Security Boulevard resulting from the taking by defendant of the property south of Security Boulevard. Plaintiff contended that the taking of the property south of the highway prevented the diversion of the stream thereon, forcing plaintiff to allow the stream to flow in its natural course on such northern part of the property, thereby diminishing the value of such part. The court denied such claim on the ground that had the stream been diverted to the southern portion as planned, the value of such portion would have been diminished by the same amount as that being claimed for the northern portion.

2. Defendant seems to contend further that the District Court, in its discussion of the accumulation of water claim which it dismissed without prejudice, nevertheless concluded that the claim neither constituted a breach of contract nor a taking within the provisions of the Tucker Act, and that plaintiff's failure to appeal results in its now being conclusively bound by the denial of the claim. This is, however, an erroneous construction of the decision. All that the court said was that defendant's "pipe * * * did not go under any part of the land taken in this case," i. e., the 31 acres. The court then went on to say that "Garden may have had a claim against the government under the Tort Claims Act; on the other hand, this may have been an item which was covered or which should have been covered by the original contract of sale. However that may be, Garden can maintain no claim for such damage in this proceeding." These statements can hardly be construed to constitute a holding, as defendant contends, that the claim here presented "does not constitute a taking so as to come within the provisions of the Tucker Act." [Def. brief at 15.]

ed drainage system for the entire area, including the road. Defendant fully complied and on December 2, 1957, received approval of its plans, including the elevation, size, and location of its drainage pipe. This was almost a month after the declaration of taking and complaint were filed in the condemnation case involving the 31 acres. It was thus plain that the original drainage plan submitted by plaintiff, which was dependent on the diversion. of the stream over the portion of plaintiff's property that defendant had now taken, could not be carried out unless, of course, defendant would, by the grant of an easement to plaintiff or otherwise, enable plaintiff to proceed therewith. However, there is no showing that defendant agreed at the time of the taking, or that Baltimore County ever subsequently required defendant, to grant such an easement or to conform in any way to any such proposed drainage plan. Instead, the county unconditionally approved defendant's plan. Nor does the record indicate that at any time during the subsequent construction of the Social Security site drainage system did Baltimore County request or require that defendant change either the elevation of its drainage pipe or the size of the drainage area served by the pipe which emptied into Security Boulevard.

None of the cases upon which plaintiff relies supports the theory that, upon facts such as are here involved, a taking under the Fifth Amendment occurred. Cases such as United States v. Chicago, B. & Q. R. Co., 82 F.2d 131 (8th Cir.) cert. denied, 298 U.S. 689, 56 S.Ct. 957, 80 L.Ed. 1408 (1936), simply hold that where the Government concededly takes property, the just compensation awarded may include not only the value of the property actually acquired, but also diminution, as a consequence of the taking, in the value of portions not acquired. This proposition is not here disputed. In our case, however, the basic issue is whether there has been a taking in the first place.

In summary, since (a) there was nothing in the nature of a direct invasion of plaintiff's land by the drainage water; (b) defendant was duly permitted by Baltimore County to empty such water into the bed of Security Boulevard; and (c) such water was carried out of the roadbed by piping which Baltimore County ordered plaintiff to install, as well as by the drainage ditch lying in the easement over plaintiff's property, which Baltimore County required plaintiff to grant, it must be concluded that plaintiff's costs and damages did not result from any "taking" by defendant of plaintiff's property or any interest therein. All of the costs and damages herein claimed were incurred pursuant to lawful requirements of Baltimore County. The independent exercise by Baltimore County of its governmental powers cannot be converted into a "taking" by defendant. Plaintiff is therefore not entitled to recover.