**Alfred and Estelle MINOT et al.**

v.

**The UNITED STATES and Guam Power Authority.**

**No. 358–75.**

United States Court of Claims.

Dec. 15, 1976.

---

Thomas J. Perham, Agana, Guam, atty. of record, for plaintiffs; Barrett, Ferenz, Bramhall & Williams, Agana, Guam, of counsel.

Anthony S. Borwick, Washington, D. C., with whom was Asst. Atty. Gen. Peter R. Taft, Washington, D. C., for defendant.

Fred E. Bordallo, Agana, Guam, atty. of record, for Guam Power Authority.

Before COWEN, Chief Judge, and KUNZIG and BENNETT, Judges.

BENNETT, Judge.

This is a taking claim brought against the United States, defendant, and the Guam Power Authority (GPA), codefendant, by plaintiffs Minot and Johnston, who seek $400,000 as just compensation. Plaintiffs are owners of real estate in the Territory of Guam. The United States took and paid for a perpetual easement through their properties in 1950, as clarified by an amended declaration of taking in 1955, "for the use of the United States * * * for the construction, maintenance, operation, repair and patrol of a 34-KV [electrical] Line and a Petroleum, Oil and Lubrication Line." Pursuant to this easement, a 34-KV line was built and operated over plaintiffs' property, supported by wooden poles 12 inches in diameter and 40 feet high.

The GPA is a public corporation of the Territorial Government of Guam, with the power of eminent domain and the power to sue and be sued in its own name. On October 5, 1972, GPA entered into a power pooling agreement with the United States, whereby GPA could use Government-owned property. The purpose of this agreement was to enable GPA to take over the island's power system from the Department of the Navy, so that, thereafter, Department of Defense installations would become customers of the GPA. The agreement was amended on September 27, 1973, to include a provision by which the Government "grant[ed] to the [GPA] * * * a revocable permit to enter the lands of the Navy for any proper purpose under this Agreement, including use of a site or sites, right-of-way or rights-of-way, * * * for the installation, operation, and maintenance of the facilities of the Authority required to be located thereon." In consideration for the grant of this permit or license, GPA paid the United States $99,400. During negotiations for the permit, the Government learned that GPA was contemplating the erection of a 115-KV line in place of the 34-KV line existing on the easement over plaintiffs' properties.

Sometime after the power pooling agreement was amended as above, GPA went forward with its plans and constructed the 115-KV line supported on steel towers 75 feet high and 30 feet square at the base. The tower complained of here was erected on the easement and straddled the property line between plaintiffs' residential properties. It is quite near their houses. Plaintiffs brought suit against both the United States and GPA in the United States district court in Guam, alleging that the United States had no right to "license" GPA to use its easement over plaintiffs' lands, and that the resulting development intolerably burdened and depreciated their properties, amounting to a taking. The district court dismissed the action against GPA for lack of jurisdiction, and transferred the claim against the Government to this court pursuant to 28 U.S.C. § 1406(c) (1970). In this court, the United States answered that if there had been a taking, it was by the action of GPA alone. GPA was therefore ordered by the court to appear and defend pursuant to Rule 41(a)(1). GPA then an-

swered, denying liability and cross-petitioning against the United States on the theory that if we should find plaintiffs entitled to recover from GPA, the Government should indemnify GPA. By order on September 10, 1976, we dismissed the cross-petition, since this court has no jurisdiction to adjudicate suits between third parties. *Rolls-Royce Ltd. v. United States,* 364 F.2d 415, 176 Ct.Cl. 694 (1966).

This case is presently before the court on the Government's motion for summary judgment, to which plaintiffs have responded but GPA has not. The issues to be decided now are whether, when defendant granted GPA permission to enter defendant's easement for the installation of powerline facilities, it thereby took by inverse condemnation a further compensable interest in plaintiffs' properties, and whether the United States is liable for a taking by virtue of GPA's actions in erecting the tower for the 115–KV transmission line on plaintiffs' lands. On these issues we hold for the United States.

■ Plaintiffs first argue that the Government could not, short of taking another easement over their lands and paying for it, create a right in a third party to make use of the Government's existing easement. Plaintiffs note that the 1955 declaration of taking of the easement specified that the taking was "for the use of the United States," and submit that use of that easement by GPA (even if partly for the benefit of Government installations) is not use for the United States. They conclude that the Government's attempt by permit to multiply the number of users of the existing easement burdens the easement beyond the scope of the original taking, and thus amounts to an additional exercise of eminent domain entitling plaintiffs to compensation. We need not decide whether the United States was within its rights under the original easement in licensing GPA, or whether the issuance of a license or permit to a third party constitutes a taking, for we think that the Government granted by its permit to GPA no more of a property interest in its lands than it had a right to do as a private individual, without the exercise of sovereign power.

Certain papers attached as exhibits to defendant's motion show that the permit "to enter the lands of the Navy" was little more than an agreement by defendant United States not to consider GPA's use of Government property a disturbance or obstruction to the Government. The Navy officers who negotiated and approved the permit decidedly did not convey any property interest that the United States had no common law right to pass to another, but merely attempted to allow GPA to use Government interests in property to the extent they had the right to allow it, without setting out in detail what the extent of that right was. The permit spoke in broad, general terms of the "lands of the Navy," yet a letter from the Navy's officer in charge of construction in the Marina Islands to the Pacific Division commander of the Naval Facilities Engineering Command, dated April 3, 1973, recognized that the Government's interests in different parcels of realty varied, and that the permit to GPA might well carry with it different rights with respect to an easement taken "for the use of the United States" than with respect to an easement taken for the Government's "use and benefit." This theme was echoed in the Pacific Division commander's letter of June 13, 1973, to the commander of the Naval Facilities Engineering Command, suggesting that there might be a problem regarding the extent of the rights passed to GPA under the permit, but declining to resolve the issue except to say that the final responsibility for the acquisition of property rights was left with GPA, which knew that the permit would not always be adequate. The June 13 communication read in part:

4. Conveyance of easements to GPA presupposes that the Government's estate is legally sufficient to permit such conveyance. There will be occasions when GPA may wish to use existing Navy utility easements and it will be found that the easement estate is not sufficient to permit such use. In these situations, it will be necessary for GPA to obtain its ease-

ment estate from the owners of the underlying fee by direct negotiation. The Navy would, of course, have no objection to these secondary easements.

The letter went on to note, by way of example of the preceding point, that while GPA had requested the Navy's permission in February 'of 1973 to use the Government's 34–KV line easement from Piti Power Plant to the Agana Diesel Plant, "GPA is now [June 1973] aware of the necessity for it to obtain its desired easement right from the owner of the underlying fee and is proceeding to do this." Thus, the Navy officers recognized the limited scope of the permit they issued to GPA well before they gave final approval to the amendment implementing it. To the extent that GPA, in making use of the 34–KV easement over plaintiffs' lands and erecting a 115–KV tower and line thereon, acted inconsistently with plaintiffs' property rights, it may be held to account for an inverse condemnation in the Superior Court of Guam. There is no contention that GPA acted as the agent of the United States when it constructed the tower.

■ Plaintiffs also claim that the United States is liable for the damages they suffered when GPA built its 75-foot high-voltage transmission line tower on their lands. They aver that the Navy knew about GPA's plans for the 115–KV line when it issued the permit, which was in fact the case, and that the permit was thereafter approved, leading to the conclusion that the United States authorized construction of the high-voltage line and must now pay for it. The foregoing discussion provides the answer to this claim for the most part. The permit issued by the United States did not authorize GPA to do anything that the Government had not the common law right to allow it to do. A Navy letter dated January 31, 1974, did forward to the Public Works Center on Guam a certificate of acceptability for GPA's "use of Navy lands and land interests for the 115–KV power transmission line" which crossed plaintiffs' properties, but this amounted to no more than the Navy's further assent to GPA's

disturbance of its easement. Importantly, we think, it was GPA, on its own initiative and at its own expense, that decided and proceeded to build the 115–KV line and the supporting tower. GPA was an independent entity, one that could decide to build or not to build the new line and tower, one that was not instructed by the Government to build them or not to build them. If GPA, as a local government instrumentality, condemned an interest in plaintiffs' lands when it erected the line and tower, it did so on its own account and without relation to anything that the Navy did. The United States bears no liability under the Fifth Amendment for such independent local action. *Garden Constr. Co. v. United States,* 423 F.2d 273, 191 Ct.Cl. 372 (1970). We have carefully examined all of the authorities relied upon by the parties but find it unnecessary to discuss them in view of our disposition of this case upon its facts as discussed above.

Upon consideration of defendant's motion for summary judgment, plaintiffs' response in opposition thereto, and defendant's reply, without oral argument, it is concluded that defendant's motion for summary judgment should be and it is granted, and the petition is dismissed, without any prejudice, however, to the right of plaintiffs to bring suit against the Guam Power Authority in a court of competent jurisdiction.