# Alabama Power Co. *v.* Carden.

*Condemnation Proceedings.*

(Decided November 7, 1914.  66 South. 596.)

1. *Eminent Domain; Compensation; Amount.*—An owner whose land is taken for public use is entitled to recover as compensation the value of the property taken at the time of condemnation, and for the diminished value at that time of his other property legally related to that taken, because of the appropriation of that taken.

2. *Same.*—Where, after condemnation the owner retains substantial rights in the property taken he cannot recover their value as compensation.

3. *Same.*—Where land taken for the impounding of water by a dam will be submerged on occasions of flood only, so that the owner may use the property to advantage at other times, the measure of the compensation for the area taken is the value of that area before and after condemnation.

[Alabama Power Co. v. Carden.]

4. *Same.*—Where land taken for the impounding of water by a dam will be so submerged as to preclude any reasonable use thereof by the owner, the measure of the compensation for the area taken is the market value of the land at the time of the taking. ·

5. *Same; Elements.*—The measure of compensation for the taking of lands for the impounding of water does not embrace any amount on account of imaginary fears entertained by people in the community as to the effect of such taking causing sickness, and thereby reducing the market value of the property.

6. *Evidence; Opinion; Competency.*—One having no knowledge theoretical or practical, of the effect of an impounding of water by a dam on a particular tract, is incompetent to testify as to the value of the land after the taking.

APPEAL from Shelby County Court.

Heard before Hon. E. S. LYMAN.

Condemnation proceedings by the Alabama Power Company to condemn property of P. L. Carden. From a judgment awarding compensation, the petitioner appeals. Reversed and remanded.

The facts sufficiently appear in the opinion of the court: The following are the written charges refused to appellant:

(4) Defendant is not entitled to recover on account of any fears that the people may entertain as to possible or imaginary dangers growing out of the building and use of said' dam by virtue of the condemnation of the property here sought to be condemned.

(6) The court charges the jury that respondent is not entitled to any damages for imaginary fear on the part of the community that the building of such dam and maintaining the same will cause sickness in such community.

(7) The fear of some people in the community is not a proper basis on which the jury can fix damages growing out of the granting of this petition.

(8) The court charges the jury that in fixing the damages in this case they cannot consider the question of whether said land sought to be condemned is ren-

25—189

dered of less market value by virtue of the fact that there exists in the neighborhood fears as to the possible injury to the value of said land growing out of the fact that sickness may be created, provided the same is not based on anything substantial, and that the fears are purely imaginary.

THOMAS W. MARTIN, KNOX, ACKER, DIXON & SIMS, and BROWN, LEEPER & KOENIG, for appellant.

RIDDLE & ELLIS, for appellee.

McCLELLAN, J.—This proceeding was instituted by the appellant in the probate court of Shelby county to condemn, in virtue of article 1 of chapter 79 of the Code of 1907, certain lands which would probably be flooded in consequence of the impounding of water of the Coosa river at a point known as lock 12. The right to condemn being unquestionable, the order to that end was passed by that court, and the report of the commissioners awarded appellee $150. An appeal was taken to the county court of Shelby county, where the jury awarded appellee $550. The power company appeals. The only questions to be considered are those touching the elements, bases, and amount of the compensation to which the landowner was entitled.

In *Alabama Power Co. v. Keystone Lime Co.,* consideration was given the general doctrines applicable to this contest. It is not necessary, as it is not desirable, that these doctrines should be repeated on this appeal. Their statement in that case must suffice for this one.

The object and purpose of the law is to compensate the owner for the value, at the time of condemnation,

of that of his property which, under eminent domain, is taken for public use and for the diminished value, at the time of condemnation, of his other property legally related to that taken, because of the appropriation of that taken.—*L. D. Telephone & Telegraph Co. v. Schmidt,* 157 Ala. 391, 47 South. 731.

There was evidence submitted on the trial that tended to show that a small part of appellee's land would be submerged in times of flood in consequence of the impounding of water at lock 12. This evidence, if credited, had the effect to qualify the taking of that area to an extent and to a degree below what would be the case if a permanent, or substantially continued, retention of water on the area was the result of the operations in question. If the effect of the dam at lock 12 was to submerge the stated area upon occasions of flood only, the appellee would have left in him the right to use the land, consistent with the condemnor's right thereto, for any purpose to which he could devote it. Where the owner, after condemnation, "retains substantial rights in the property, he cannot insist on their value being included in the measure of his compensation."—10 Am. & Eng. Ency. of Law, p. 1150; 2 Lewis on Eminent Domain, § 746. The owner is only entitled to be compensated for that taken and other remaining property injuriously affected in consequence. Accordingly, if the jury should find that the area was to be actually submerged upon occasions of flood only, and that these occasions would leave to the owner opportunity for its use to his own advantage, the measure of the compensation as for the property (area) thus taken is the value of that area before and after condemnation. Under such circumstances, to require the condemnor to compensate for the whole value of the area thus appropriated would necessarily afford

the owner a remuneration for that of which he has not been deprived. The trial court instructed the jury upon the theory that the market value of the land was the measure of the compensation as for the area to be submerged, taking no adequate account of the condition, if so found by the jury from the evidence, that the submersion would only be periodic, not permanent, and that there would remain in the owner a consistent right and use for which he should not be compensated. In that particular there was error. If the jury should find from the evidence that the submersion of the area would be of such sort as to preclude any reasonable use by the owner, not inconsistent with the right established by the condemnation, then the measure of the compensation for the area thus taken would be that which met the approval of the court below.

The appellee had other land, cornering with the five acres a part or all of which was expected to be or would be submerged on which he resided. It seems that the whole of his holdings was one tract. In laying the bases for compensation to the owner it was asserted that the remaining lands would be impaired in value in consequence of the submersion of the area indicated. On this issue the evidence was in conflict. As tending to sustain the asserted diminution in value of the remaining lands, the theory was that the retention of water on the acreage fronting Beeswax creek would make the owner's farm a sickly neighborhood; that water so retained or retarded would contribute to a malarial condition, deleterious to health.

A number of witnesses were examined for the owner, and to them this question, in substance, was propounded: "What, in your judgment, will the tract of land be worth after the water is thrown on it, as indicated by the contour line?" The objection thereto

[Alabama Power Co. v. Carden.]

included this: That the witness was not shown to be qualified to form or have an opinion on the effect on the value of the lands after water had been so retained or retarded. We think the objection was well taken. The witnesses named in the assignments of error were not shown to have had any experience in such matters. They were not shown to have had any training or instruction wherefrom an opinion in that connection could be formed. Apparently they were residents of that section without even the opportunity of a general observation that would contribute to qualify an ordinary man to make up an opinion in the premises. Doubtless any member of the jury had as much qualification to form an opinion of the result of the water's being retained or retarded on the owner's land as these witnesses had. Our opinion is that these witnesses without any knowledge, practical or theoretical, of the effect in respect of the value of the tract the condition described would have, should not have been allowed to give their mere opinion of diminished value to result to contiguous land from the water's retention or retardation on the adjacent land. The rulings within this category were erroneous.

References to the principles announced and applied in *Alabama Power Co. v. Keystone Lime Co., present term, supra,* lead to the conclusion that the court below erred in refusing to the appellant special charges 4, 6, 7, and 8.

The judgment is reversed, and the cause is remanded. Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and DE GRAFFENRIED, JJ., concur.