On Application for Rehearing

PER CURIAM.
The opinion of October 31, 2003, is withdrawn, and the following is substituted therefor.
The City of Huntsville (“the City”) appeals from a judgment entered on a jury verdict awarding compensation in a condemnation proceeding to Roland H. Rowe, as trustee of the Dimitriu Family Trust, and Elvina Geauque, the owners of the condemned property (“the owners”), and from the trial court’s order denying the City’s postjudgment motion for a new trial. We affirm.
The City condemned a portion of the owners’ property to secure an easement described as follows in the order of condemnation:
“[A] sanitary sewer easement under over and along the hereinafter described lands, together with all rights appurtenant thereto and including the right to enter upon said lands for the purpose of constructing, maintaining, repairing, altering, replacing or removing a sewer line or lines, manholes and all appurtenances thereto under, upon, over, through, above and across the lands hereinafter described; the right to prevent the placing or maintaining of any obstruction on said lands that would interfere with the purpose of said easement, as above and hereinafter described; and all other rights and benefits necessary or convenient for the full enjoyment or use of the easement sought to be acquired, including but not limited to the full and free right of ingress and egress over and across the hereinafter described lands described in said COMPLAINT....”
The easement is a 40-foot-wide strip, comprising 3.624 acres of a 290.19-acre tract of unimproved land. The probate court awarded the owners compensation for the property taken for the easement. The owners appealed the probate court’s award to the Madison Circuit Court for a jury trial on the issue of damages pursuant to § 18-1A-283, Ala.Code 1975.
The owners moved for a partial summary judgment in the circuit court, asking the court to determine the proper method of valuing, under § 18-1A-I70(b), Ala. Code 1975, the property taken for the easement. Section 18-1A-I70(b) provides: “If there is a partial taking, the valuation rule is the difference between the fair market value of the entire property before the taking and the fair market value of the remainder after the taking.” More specifically, the owners sought a judgment declaring “that the taking of an easement must be valued as if the entire fee is taken,” and an order prohibiting the City from contending or testifying at trial “that the damage[s] to be awarded the property owner for the land actually taken within the easement are less than the value of the entire fee of said land within the easement at the time of the taking.” (Emphasis added.) The trial court granted the owners’ motion.
At trial, the owners moved in limine for an order prohibiting the City’s appraisal experts from testifying in a manner inconsistent with the partial summary judgment. In other words, the owners sought to preclude testimony that the value of the 3.624 acres constituting the easement after the taking was greater than $0. The trial court granted the motion. Before the jury returned its verdict, the City’s appraisal expert made an offer of proof that the value after the taking was 75% of the value *555 of the land before the taking. The. jury awarded the owners $68,856. The trial court entered a judgment on that verdict. The trial court denied the City’s motion for a new trial, and the City appealed, specifically challenging the partial summary judgment and the order on the motion in limine.
The dispositive issue on appeal is whether the trial court erred in ruling that the taking of the owners’ property for an easement for an underground pipeline must be compensated as if the entire fee-simple title to the property on which the easement lies had been taken. The City contends that it should have been allowed to present evidence indicating that the market value of the 3.624 acres constituting the easement was greater than $0 after the taking. The owners contend that they are entitled, as a matter of law, to the full market value of the 3.624 acres, as though fee-simple title to the 3.624 acres had been taken.
According to the undisputed evidence, the 290-acre tract is currently devoted to agriculture, but its highest and best use is for industrial and commercial development. The value of the acreage unencumbered by the easement has not been diminished by the taking. The City points out that the proposed sewer pipe would be installed approximately 16 feet below the surface and that the only visible evidence of the pipeline’s presence will be a series of 11 raised manholes spaced 200 to 400 feet apart along the length of the pipeline. Additionally, the City will control vegetation growth within the easement, and the owners are prohibited from fencing the area or placing structures or other obstructions that would interfere with the City’s maintenance of the pipeline. In their brief to this Court, the owners state that, according to testimony presented at trial, the City “contemplates being able to use the easement as a virtual roadway, maintaining it for vehicular traffic.” Furthermore, the owners state, the evidence reflects that the City “contemplates that when the old sewer line that is adjacent to the new sewer easement needs repair or replacement, it can use any part of the 3.624-acre,easement as a staging and work area for its men, material, machinery, bulldozers, buildings, and equipment.”
All parties agree that this case is controlled by § 18-1A-I70(b), which sets forth the valuation rule for partial takings. “Subsection (b) states the standard of compensation in Alabama for a partial taking of the owner’s property, and to that extent is essentially the same as [the Uniform Eminent Domain Code] Section 1002(b).” Commentary to § 18-1A-170. Subsection (b) “states accurately and codifies the standard previously used in Alabama and continues past Alabama law.” Id. (emphasis added). The parties further agree that the proper standard for valuing a partial taking is the “before-and-after” rule as set forth in § 18-1A-I70(b).
The City concedes that the partial summary judgment is consistent with cases involving takings for a railroad right of way. More specifically, it acknowledges in its brief that in the “ordinary class” of cases, that is, “in cases involving railroad easements the measure of the value of the railroad easements is the full actual value of the land,” as though the full fee interest was taken, citing Ensign Yellow Pine Co. v. Hohenberg, 200 Ala. 149, 75 So. 897 (1917). Nevertheless,- the City contends that a case, such as this one, involving a subsurface pipeline easement is not of the “ordinary class” of easement cases. In a pipeline-easement case, the City argues, the fee owner “retains i.. significant rights of ownership with value.” In this case, the City insists, the owners retain significant rights, and therefore are, not *556 entitled to the full value of the land as though the fee was taken.
The City relies upon Alabama Power Co. v. Carden, 189 Ala. 384, 66 So. 596 (1914), in which Alabama Power brought a condemnation action to acquire an easement to flood — periodically'—a portion of property owned by P.L. Carden. More specifically, “[t]here was evidence submitted [at] the trial that tended to show that a small part of [Carden’s] land would be submerged in times of flood in consequence of the impounding of water at lock 12” on the Coosa River. 189 Ala. at 387, 66 So. at 596 (emphasis added). The Court stated:
“The trial court instructed the jury upon the theory that the market value of the land was the measure of the compensation as for the area to be submerged, taking no adequate account of the condition, if so found by the jury from the evidence, that the submersion would only be periodic, not permanent, and that there would remain in [Carden] a consistent right and use for which he should not be compensated.”
189 Ala. at 388, 66 So. at 597 (emphasis added).
This Court held that the instruction was error. 189 Ala. at 388, 66 So. at 597. In doing so, it explained:
“This evidence [that a small part of Car-den’s land would periodically be submerged], if credited, had the effect to qualify the taking of that area to an extent and to a degree below what would be the case if a permanent, or substantially continued, retention of water on the area was the result of the operations in question. If the effect of the dam at lock 12 was to submerge the stated area upon occasions of flood only, [Carden] would have left in him the right to use ■ the land, consistent with [Alabama Power’s] right thereto, for any purpose to which he could devote it. Where the oumer, after condemnation, ‘retains substantial rights in the property, he cannot insist on their value being included in the measure of his compensation.’ 10 Am. & Eng. Ency. of Law, p. 1150; 2 Lewis on Eminent Domain, § 746. The owner is only entitled to be compensated for that taken and other remaining property injuriously affected in consequence. Accordingly, if the jury should find that the area was to be actually submerged upon occasions of flood only, and that these occasions would leave to the owner opportunity for its use to his own advantage, the measure of the compensation as for the property (area) thus taken is the value of that area before and after condemnation. Under such circumstances, to require [Alabama Power] to compensate for the whole value of the area thus appropriated would necessarily afford [Carden] a remuneration for that of which he has not been deprived.”
189 Ala. at 387-88, 66 So. at 596-97 (emphasis added).
The same day Carden was decided, this Court also decided Alabama Power Co. v. Keystone Lime Co., 191 Ala. 58, 67 So. 833 (1914), on which the owners rely. In Keystone Lime, this Court considered the method of valuing an easement acquired by Alabama Power Company in its action to condemn a 100-foot-wide strip of land for the “erectflon] and maint[enanee of] towers, poles, or wire lines for the transmission of electricity” across the property of the Keystone Lime Company. 191 Ala. at 59, 67 So. at 833. The area of the easement comprised approximately 14 acres. The physical encumbrance consisted of a series of steel towers 75 feet high, placed approximately 750 feet apart, supporting electrical wires at least 25 feet above the ground. 191 Ala. at 60-62, 67 *557 So. at 833-35. Alabama Power had the right to travel the easement to maintain its towers and to construct additional towers if necessary. 191 Ala. at 62, 67 So. at 834. The original opinion, before it was modified on rehearing, noted that Keystone Lime had the right to “use the right of way for any purpose which [did] not conflict with the paramount rights of [Alabama Power].” Id.
The Court discussed the method of compensation for the 14-acre right of way, as well as compensation for diminution in value of the property adjoining the right of way. In discussing the measure of compensation for the 14 acres, the Court stated:
“In this case, then, in so far as the 100-foot strip is concerned, [Keystone Lime] is entitled to recover of [Alabama Power] the value of the easement which has been sequestered to the use of [Alabama Power]. The right of way, it appears, takes up about 14 acres of [Keystone Lime’s] land. The question then is: What was the fair, actual value of that 14 acres before its sequestration for [Alabama Power’s] uses, and how much is its fair actual value to [Keystone Lime], for the purposes to which [Keystone Lime] may lawfully put it, since its appropriation to the uses of [Alabama Power]? The difference between the two values will fix the amount which should be awarded [Keystone Lime] on account of the land condemned for such right of way. The difference between the actual fair value of the land actually condemned and its fair actual value for the uses to which [Keystone Lime] may lawfully put it since the condemnation is the true amount of the loss which has been occasioned [Keystone Lime] by reason of this condemnation proceeding in so far as the right of way, considered alone, is concerned.”
191 Ala. at 64, 67 So. at 835.
The Court distinguished the compensation formula applicable to a taking for a railroad right of way. The Court explained:
“When a railroad company condemns a right of way, it has the exclusive right to the use of the entire surface of the right of way, so long as the right of way remains in use for railroad purposes. The railroad company may place as many tracks on its right of way as it sees proper, may fence it, and in fact possesses the right to the exclusive use of the surface. The ultimate fee which resides in the owner of the land after such a condemnation is therefore of but little practical value. When, therefore, such a condemnation is had, the damages of the owner of the land, in so far as the right of way is concerned, are the actual value of the land, no more and no less. His entire damages in such a case are the actual value of the land actually condemned and the damages, if any, which have resulted to his other lands, out of which the right of way is carved, by reason of the existence of the right of way through his land.”
191 Ala. at 63, 67 So. at 834 (emphasis added).
On application for rehearing in Keystone Lime, however, the Court modified its original opinion. On rehearing, the Court noted that its attention had been called to Long Distance Telephone & Telegraph Co. v. Schmidt, 157 Ala. 391, 47 So. 731 (1908), which, the Court stated, “held that, where lands are condemned for a right of way, the measure of damages recoverable by the landowner for the lands taken for the right of way is the value of the lands so taken for the right of way when taken.” Keystone Lime, 191 Ala. at 73-74, 67 So. *558 at 838. The Court acknowledged that its cases were “somewhat in conflict,” but, in order “to preserve the harmony, in so far as [it could], ... [it determined] to follow and reaffirm ... Schmidt” 191 Ala. at 74, 67 So. at 838. As modified, Keystone Lime held that “as [Alabama Power had] acquired the right to use the entire surface of the land condemned, ... the jury should allow [Keystone Lime] the value of the strip so condemned, less the value of the mineral interest therein.” 191 Ala. at 74, 67 So. at 838 (emphasis added). That holding clashes with the previously noted holding of the original opinion that Keystone Lime retained the right to use the right of way for any purpose that did not conflict with the rights of Alabama Power.
We do not consider Keystone Lime to be inconsistent with Carden. On rehearing in Keystone Lime, the Court took into account the broad scope of the power company’s easement — the “right to use the entire surface of the land condemned.” 191 Ala. at 74, 67 So. at 838 (emphasis added). In Keystone Lime, any residual use by the landowner was merely a favor granted by the power company. Presumably, because the power company had the right to use the entire surface of the land condemned, it could simply decline to permit Keystone Lime to cultivate the surface. In Carden, the power company acquired the periodic right to flood the property, a significantly lesser taking of surface rights than is the case with the construction of power lines and the concomitant “right to use the entire surface of the land condemned.”
The easement in the case before us is comparable to the broad easement at issue in Keystone Lime. The easement here grants the City not only the rights to place a sewer line beneath the property and manholes on the surface, but also the far more extensive rights to enter upon the property for multiple purposes, including placement of the sewer line, “under, over, through, above and across” the land. Furthermore, the City retains for itself “all other rights and benefits necessary or convenient for the full enjoyment or use” of the easement, including “the full and free right of ingress and egress” over and across the property. (Emphasis added.) The City presently uses the easement for an underground sewer and there are 11 raised manholes on the surface, but the sweeping reservation of future rights would allow it, if it so chose, to increase the extent of its use of the easement, both above and below the ground, to a degree that would preclude the owners from using the property in any way. The rights acquired by the terms of the order of condemnation control the scope of the taking. See Cousins v. Alabama Power Co., 597 So.2d 683 (Ala.1992), in which this Court held that the power company’s ability to add fiber-optic telecommunication lines to its existing easement was governed by its original condemnation petition and the language of the deeds granting the easements.
Certainly there are cases in which a fact-finder must resolve a factual dispute concerning the extent to which the terms of an easement allow the property owner to use the condemned land before the value of the condemned land can be determined. This, however, is not such a case. In cases such as this one, where the scope of the easement is so sweeping as to be the equivalent of the taking of fee-simple title to the property, a trial court can decide, as a matter of law, from the four corners of the deed granting the easement and the condemnation order or orders that the condemnation constitutes a complete taking. “The interpretation of such easements is a question of law for the court and is appropriately resolved on a motion *559 for summary judgment.” Cousins, 597 So.2d at 687.
The cases relied upon by the parties illustrate this point. The language of the easement in Keystone Lime, like the language of the easement before us, was so sweeping that it was appropriate for the trial court to determine that it was the equivalent of a complete taking. The language of the easement in Carden, on the other hand, was not so sweeping, and it was necessary to take evidence on the before-and-after value of the property condemned, where the taking was less than that of a taking of fee-simple title. In either instance, the value of the easement would be determined by the valuation rule contained in § 18-1A-I70(b), i.e., “the difference between the fair market value of the entire property before the taking and the fair market value of the remainder after the taking.” See City of Cullman v. Moyer, 594 So.2d 70 (Ala.1992).
In light of the sweeping, pervasive taking of the owners’ property authorized by the condemnation order, particularly its broad reservation of future rights, the trial court properly deemed the easement to be the equivalent of the taking of fee-simple title to the entire 3.624 acres constituting the easement; it therefore properly entered the summary judgment in favor of the owners. The residual rights left to the owners at the pleasure of the City would be of cold comfort to them if the City subsequently chose to exercise all of the rights granted by the easement. For that reason, although the valuation process is guided by § 18-1A-I70(b), the initial determination by the trial court of the extent of the easement must be governed by the extent of the potential use of the property contemplated by the condemnation order and the resulting easement.
We affirm the judgment in favor of the owners and the order denying the City’s postjudgment motion.
APPLICATION GRANTED; OPINION OF OCTOBER 31, 2003, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
HOUSTON, SEE, LYONS, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.