2012 VT 96

## David M. Farrell, Trustee of the David M. Farrell Trust v. Vermont Electric Power Company, Inc. and Vermont Transco, LLC

[68 A.3d 1111]

No. 11-377

Present: Reiber, C.J., Dooley, Skoglund and Burgess, JJ., and Howard, Supr. J., Specially Assigned

Opinion Filed December 7, 2012

Motion for Reargument Denied March 1, 2013

308

*Peter F. Langrock*, Middlebury, and *Hobart F. Popick*, Burlington, of *Langrock Sperry & Wool, LLP*, for Plaintiff-Appellant.

*Gary F. Karnedy* and *Kevin M. Henry* of *Primmer Piper Eggleston & Cramer PC*, Burlington, for Defendants-Appellees.

¶ 1. **Burgess, J.** Plaintiff David Farrell, Trustee of the David Farrell Trust, appeals the Chittenden Civil Division's grant of summary judgment for defendants Vermont Electric Power Company and Vermont Transco (together, VELCO), the holders of an easement for the construction and operation of electrical transmission lines on plaintiff's property. Plaintiff claims that VELCO's easement is limited to the installation and operation of transmission lines necessary for the so-called Queen City Tap Project. As such, he argues that VELCO exceeded the scope of its easement by installing a second transmission line on plaintiff's property in connection with an unrelated transmission-line project. He further argues that, even if VELCO's easement authorizes its construction of transmission lines for unrelated projects, a genuine issue of material fact exists as to whether the new line overburdens plaintiff's property. The trial court held that the easement's express terms authorize VELCO to install transmission lines unrelated to the Queen City Tap Project, and that any increased

impact on plaintiff's property caused by the new line does not amount to overburdening. We affirm.

¶ 2. The facts may be summarized as follows. Plaintiff owns a parcel of land in South Burlington (the Property). In 1972, VELCO obtained a certificate of public good for the Queen City Tap Project, a venture to erect electrical transmission lines in Chittenden County. In December 1976, the Public Service Board issued an order (the 1976 Order) in a condemnation proceeding relating to the Property. The 1976 Order explained that VELCO was "condemning a permanent easement" on the Property, and described the easement as:

> A perpetual right and easement to construct, inspect, operate, maintain, reconstruct, relocate and remove lines of poles or towers or both with wires and/or cable thereon for transmission of intelligence by electricity and all necessary foundations, anchors, guys, braces, fittings, equipment and appurtenances including buried ground wires or cables over and upon [a right of way] hereinafter described . . . .

The 1976 Order further described the easement as including a "permanent right" to cut, trim and remove trees "outside the limits of said right of way strip" that may "interfere with or be likely to interfere with, the successful operation of said line or lines now or hereafter to be constructed on said right of way strip hereinbefore described." Finally, on the question of compensation for VELCO's use of the Property, the 1976 Order explained that "the total compensation . . . for the permanent easement being acquired is $38,850.00, allocated entirely to the value of the property being taken," and that the Board found no further "impairment to the value of the remaining property or consequential damages."

¶ 3. In 1977, as part of the Queen City Tap Project, VELCO installed a three-wire electric transmission line (the QCT line) within the right of way described in the 1976 Order. The QCT line had ten wooden structures consisting of twenty-one poles — nine two-pole structures and one three-pole structure. The structures were strung along the center of the right of way and supported three wires, arrayed horizontally.

¶ 4. In 2005, VELCO obtained a certificate of public good for the so-called Northwest Reliability Project, which included the

erection of an electrical transmission line from New Haven to South Burlington, passing through various towns in Addison and Chittenden Counties. In 2008, as part of the Northwest Reliability Project, VELCO installed a second transmission line (the NRP line) within the right of way located on the Property. The NRP line has ten single-pole structures that range from sixty-five to eighty-seven feet in height, which support three transmission wires, arrayed vertically. The NRP line also supports a static wire with fiber optic capacity. At the same time that it built the NRP line, VELCO modified the QCT line, replacing the original two-pole structures with ten single-pole structures, ranging in height from sixty-five to eighty-two feet, which support three wires, now arrayed vertically. The QCT line and NRP line are now situated parallel to each other about thirty-one feet apart.

¶ 5. In 2010, plaintiff sued VELCO for damages in Chittenden Superior Court, alleging that VELCO's use of the Property, specifically its installation of the NRP line, was "a material overburdening" of the easement granted by the 1976 Order. Plaintiff further alleged that VELCO failed to provide compensation for its expanded use of the Property, and for the resulting diminution in the Property's value. VELCO moved for summary judgment, arguing that the language of the easement unambiguously gave it the right to construct transmission lines on the Property unrelated to the QCT line.

¶ 6. Plaintiff responded that the 1976 Order confined VELCO's authority to the construction of transmission lines relating to the Queen City Tap Project. He further asserted that there was a genuine issue of material fact as to the extent to which VELCO's installation of the NRP line and the changes to the QCT line overburdened the Property, claiming that towers erected for the NRP line were anywhere from twenty-five to sixty-seven percent taller than those for the original QCT line. If they fell in a westerly direction, plaintiff added, the newly constructed towers would land outside the perimeter of the right of way and onto plaintiff's adjoining property. Plaintiff also alleged overburdening due to the vertically arrayed wires appearing as six distinct wires to an observer on the Property, instead of the "one cluster" of wires formerly viewable with the original QCT line.

¶ 7. The trial court granted summary judgment for VELCO. The court concluded that the easement's terms limit neither "the number of lines of poles or towers, their height, [n]or the

orientation of the wires or cables attached to them," nor the use of the right of way to the QCT line. The court emphasized that the easement's language permitting VELCO the right to remove vegetation that might impede operation of the "line or lines now or hereafter to be constructed" supported VELCO's right to construct new lines on the right of way. Finally, the court rejected plaintiff's argument that a new finding of public necessity was required for any new line. Plaintiff appealed.

¶ 8. Reiterating his arguments below, plaintiff first claims that the scope of VELCO's use of plaintiff's property is defined by the 1976 Order, in which the Board determined that the QCT line, but no other project, was necessary for the public good. Plaintiff argues, therefore, that VELCO lacked the authority to expand its use to the unrelated NRP line. Plaintiff also argues that, even if the 1976 Order permits its installation, the NRP line magnified the burden on the Property, and a genuine issue of material fact remains as to the extent that the Property has been overburdened. Plaintiff again raises the greater height of the NRP line's towers, and the risk of their falling, and points to the additional, vertically-arrayed wires installed for the NRP line. Echoing the trial court, we hold, pursuant to the easement's unambiguous terms, that VELCO had the authority to erect the NRP line on the Property. We further hold that, again, in light of its broad grant of authority, VELCO did not exceed the easement's scope, and thus did not overburden the Property by constructing the NRP line. Accordingly, we affirm the court's grant of summary judgment for VELCO.

¶ 9. We review decisions for summary judgment using the same standard as the trial court. *Lamay v. State*, 2012 VT 49, ¶ 6, 191 Vt. 635, 49 A.3d 559 (mem). We will affirm the court's ruling if there is no genuine issue of material fact and the party seeking summary judgment is entitled to judgment as a matter of law. *Id.* The party opposing summary judgment is given the benefit of all reasonable doubts and inferences. *Id.*

¶ 10. We first address plaintiff's argument that VELCO lacked the authority to construct the NRP line on the Property and begin by explaining how condemnation easements are obtained under Vermont law.[1] As a public utility, VELCO's authority to use

---

[1] We note that while plaintiff's complaint emphasized that VELCO neither purchased nor condemned a separate easement relating to the NRP line, plaintiff

the Property rests in 30 V.S.A. § 110, which permits a public service corporation to condemn an easement over private property when "necessary . . . [to] render adequate service to the public in the conduct of its business." Pursuant to Vermont statutory law, a public utility's condemnation of an easement is a two step process. The utility must first obtain a certificate of public good for the project for which the easement is needed. See 30 V.S.A. § 248(a)(2)(B) (providing that no public utility "may exercise the right of eminent domain in connection with . . . construction of any such [electric] transmission or generation facility, unless the public service board first finds that the same will promote the general good of the state and issues a certificate to that effect"). Having obtained the certificate of public good, the utility must then petition the Board, which, following a hearing, must find, among other requirements, that the proposed use "is necessary . . . [to] render adequate service to the public." 30 V.S.A. §§ 111, 112(2)-(4); see also Auclair v. Vermont Elec. Power Co., 133 Vt. 22, 24-25, 329 A.2d 641, 643 (1974) (describing statutorily-defined condemnation process). Where the Board finds that condemnation is necessary, the utility's authority to use the condemned land is defined by the terms of the easement, as described and approved in the Board's decision. See Auclair, 133 Vt. at 27, 329 A.2d at 644 (explaining that after holding hearing on issue of necessity Board may grant utility permission to condemn land). As noted, VELCO obtained the requisite certificate

sought only damages arising from what he characterized as an additional taking of his property, as well as "a material overburdening of the 1976 condemned easement" and the resulting diminution in the value of his land. Though implicitly asserting that VELCO lacked authority to install the NRP line on property condemned solely for the QCT line, the logical remedy for which was an injunction, plaintiff did not seek to enjoin VELCO from erecting the NRP line on the Property. See Patch v. Springfield Sch. Dist., 2009 VT 117, ¶ 6, 187 Vt. 21, 989 A.2d 500 (noting that landowner obtained preliminary injunction to prevent construction of parking lot on adjacent property based on a restrictive covenant). With VELCO having already installed the NRP line on the Property, plaintiff's claim that such use was unauthorized is arguably moot. See Houston v. Town of Waitsfield, 2007 VT 135, ¶¶ 2, 6-10, 183 Vt. 543, 944 A.2d 260 (mem.) (describing landowners' claim that superior court erred in denying request to enjoin town from drilling wells in a road abutting their property without first completing condemnation proceedings and holding that appeal was moot because wells had already been drilled). Though the light of controversy on this issue is therefore dim, if lit at all, we address plaintiff's authority argument because it is inextricably linked to our determination of the easement's scope.

of public good for the NRP line in 2005, satisfying the requirement of 30 V.S.A. § 248.

¶ 11. The proper method of interpreting condemnation easements, and specifically whether their interpretation should differ from the construction of easement deeds, is a novel question for this Court. But though they are born of different processes, the former by dint of statutory condemnation proceedings and the latter from arms-length negotiations, we agree with those courts from other jurisdictions that have interpreted a condemnation easement in the same way as an easement deed. See *Cousins v. Ala. Power Co.*, 597 So. 2d 683, 686-87 (Ala. 1992) (interpreting easement deeds and condemnation easement using same principles); *Spears v. Kan. City Power & Light Co.*, 455 P.2d 496, 501 (Kan. 1969) (explaining that scope of condemnation easement is defined by terms of condemnation order). Therefore, as with the interpretation of an easement deed, unless ambiguous, the terms of a condemnation easement described in the order granting the easement define the easement holder's authority to use the condemned property. See *DeGraff v. Burnett*, 2007 VT 95, ¶ 26, 182 Vt. 314, 939 A.2d 472 (explaining that "[t]he permissible extent of the use of [an] easement must be determined from the language in the deed"); *Kipp v. Chips Estate*, 169 Vt. 102, 107, 732 A.2d 127, 131 (1999) ("[E]xtrinsic evidence is not admissible to show the intent of the parties to a deed unless the language of the deed is ambiguous."). The question, therefore, is whether VELCO's authority to use the Property, as defined by the terms of the easement described in the 1976 Order, extends to the NRP line.

¶ 12. We conclude that the easement unambiguously authorized VELCO to construct other lines on the Property. The easement permits VELCO to construct and maintain "lines of poles or towers or both with wires and/or cables [on the Property] for the transmission of electricity" and to manage tree growth that might "interfere with or be likely to interfere with, the successful operation of said line or lines now or hereafter to be constructed" on the Property. As the trial court explained, nothing in the easement's language restricts VELCO from constructing transmission lines unrelated to the QCT line. Thus, although the 1976 Order refers to the QCT line, and the easement's roots undeniably rest in that project, the easement described in the

1976 Order is not so narrow. See *Rowe v. Lavanway*, 2006 VT 47, ¶ 13, 180 Vt. 505, 904 A.2d 78 (mem.) (interpreting easement using its express terms and refusing to imply limitation of easement's use where no such limitation was included in easement's language). In short, because the 1976 Order expressly permits VELCO to install and operate transmission lines on the Property, and does not confine VELCO's use for that purpose to the QCT line alone, VELCO's installation of the NRP line was authorized.

■ ■ ¶ 13. We next consider whether the NRP line overburdened the easement. An easement must be used "in a manner consistent with the use contemplated at the time of its creation," and may not be used "in a way that materially increases the burden on" the property subject to the easement. *Rowe*, 2006 VT 47, ¶ 22. Whether a particular use overburdens an easement, therefore, depends on the easement's original purpose and the scope of its authorized use. *Id.*; see also 3 J. Sackman, Nichols on Eminent Domain § 9.02[11][a], at 9-43 (2006) ("If a new use of an easement is consistent with the original purpose of an easement, then no additional taking or easement is required."). Where an easement is obtained through condemnation, "[i]f the new use is of the same character as the use for which it was originally taken, and it advances the original purpose, there is an uncompensable (for the fee owner) difference in degree of use." *Id.*

■ ¶ 14. Here, the easement's original purpose, like its grant of authority, is found in its express terms. The easement authorizes the installation and maintenance of towers, poles, lines, and other infrastructure on the Property "for the transmission of electricity." Although this purpose was originally pursued through the construction of the QCT line, as explained above, the easement itself does not limit the authorized use to the QCT line or a single transmission-line project. See *Rowe*, 2006 VT 47, ¶ 23 (refusing to read restriction on use of easement into a deed where deed's express language contained no such restriction).

¶ 15. Nor does the installation of the NRP line, as a use consistent with the easement's purpose, impose an additional burden on the Property. We recognize that this is not a case where an easement's use has evolved "to reflect modern developments," such as in *Rowe*, where we affirmed an easement holder's ability to use an automobile upon a right-of-way granted in 1881. 2006 VT 47, ¶¶ 23-24. Here, VELCO simply installed a second

electrical transmission line on the Property, where only one line existed before. Nevertheless, plaintiff produced no evidence that the NRP line imposes an additional burden on the Property. The risk that the now taller transmission towers standing on the Property could fall in a westerly direction, and land outside the condemned right-of-way, is speculation. Moreover, plaintiff cites no authority to support that taller towers, by virtue of their greater height, or that a view of six wires, versus the appearance of one before, impose a new burden on the Property. See *Brennen v. Mogul Corp.*, 151 Vt. 91, 96, 557 A.2d 870, 872 (1988) (concluding that bald argument, left unsupported with legal authority, was inadequately briefed). More broadly, the 1976 Order recited a ·compensation award for the full value of the condemned land, and plaintiff has not shown that VELCO's installation of the NRP line, or its updates to the QCT line, constituted an additional taking requiring further compensation.[2]

¶ 16. In sum, VELCO's easement, by its express terms, authorized its installation of the NRP line on the Property. Such use is also consistent with the easement's purpose — the transmission of electricity — and does not impose an additional burden on the Property requiring further compensation. Accordingly, the trial court's grant of summary judgment for VELCO is affirmed.

*Affirmed.*

¶ 17. **Reiber, C.J.,** concurring and dissenting. In 1976, VELCO acquired through the power of eminent domain a 75-foot wide easement on Thomas Farrell's property for a 115-KV electrical transmission line pursuant to a certificate of public good for the so-called Queen City Tap Line project. The order of condemnation by the Public Service Board incorporated a finding that the property "to be condemned . . . to build the Queen City Tap Line is sought and necessary in order that [VELCO] may render adequate service to the public." As compensation for the taking, the Board awarded Farrell $38,500 "allocated entirely to the value

---

[2] Because we disagree with plaintiff's view that VELCO's installation of the NRP line constituted an additional taking of plaintiff's property, we reject his argument that affirming the trial court's decision would establish an "unworkable rule of law" for the determination of severance damages in the context of condemnation proceedings. We note that plaintiff's claim for severance damages presumes a diminution in the value of the land bordering the easement, whereas the 1976 Order found no "impairment to the value of the remaining property," and plaintiff has produced no evidence to change that conclusion.

of the property taken," finding no "impairment to the value of the remaining property or consequential damages."

¶ 18. Thirty years later, VELCO was granted a certificate of public good for a new electrical transmission project, the Northwest Reliability Project, and in connection therewith installed a second transmission line of poles and wires on Farrell's land and replaced the original line, but this time without the payment of any compensation.[3] The trial court here found that this was permissible as a matter of law, and a majority of the Court agrees. As explained below, I do not. While I concur that the second parallel arrangement of poles and wires was within the boundaries of the 1976 taking and of like kind to the general purpose of the original taking, this does not resolve the question whether it nevertheless imposes an additional burden for which compensation should be awarded. That remains a question of fact, and should not have been determined on summary judgment. Accordingly, I respectfully dissent on this issue.

¶ 19. To adequately address the damage question it is necessary to briefly consider the purpose and scope of the taking and the majority's restrictive understanding of the issue. It is the condemnation *petition* and *order* that define the property interest to be taken and the public purpose to be served. See 30 V.S.A. § 111(a) (agency must "present a petition to the public service board . . . describing the property or right, and stating why . . . its acquisition is necessary"); *Grice v. Vt. Elec. Power Co.*, 2008 VT 64, ¶¶ 25-26, 184 Vt. 132, 956 A.2d 561 (concluding that access routes to easement condemned for transmission line were adequately described in condemnation order in light of fact that "VELCO's petition adequately described the easement it sought" and Board's findings of public necessity showed that access was necessary to "maintain the reliability and safety of the line").

¶ 20. Indeed, in construing the scope and purpose of a taking most courts routinely look to the petition and condemnation order of the issuing court or public agency. See, e.g., *City of Huntsville v. Rowe*, 889 So. 2d 553, 558 (Ala. 2004) ("The rights acquired by the terms of the order of condemnation control the scope of the taking."); *Keokuk Junction Ry. v. IES Indus., Inc.*, 618 N.W.2d 352, 355 (Iowa 2000) ("The notice of condemnation provided . . . the scope of the easement."); *Hudson v. City of Shawnee*, 790 P.2d

---

[3] Plaintiff David Farrell is Thomas Farrell's successor in interest.

933, 939 (Kan. 1990) ("The property rights taken by the condemnor are to be determined by the language in the petition for eminent domain and the report of the appraisers.") (citation omitted); *General Hosp. Corp. v. Mass. Bay Transp. Auth.*, 672 N.E.2d 521, 525 (Mass. 1996) ("When deciding the scope of an easement taken by eminent domain, we must consider the language of the taking order and the circumstances surrounding the taking.") (citation omitted).

¶ 21. In focusing exclusively on the language of the Farrell easement in isolation, the majority here overlooks relevant provisions of the petition and order in which it appears. The petition alleged that VELCO required Farrell's property "to construct an electric transmission line . . . connecting its proposed" substations in Williston and South Burlington, and further averred that it could not "render service for its customer without construction of this line." The Board's resulting order of condemnation specifically incorporated its earlier finding "beyond any doubt that this line is needed immediately in order that [VELCO] may render adequate service to the public." Indeed, the findings of necessity incorporated within the condemnation order refer repeatedly to the "projected line," the proposed "transmission line," and "the proposed site of this line," leaving little doubt that the Board contemplated the installation of a single line of poles and wires to accomplish the project.

. ¶ 22. In concluding otherwise, the majority relies on a single phrase within the lengthy easement language granting VELCO the right to cut, trim, or remove trees that may interfere with the operation of "said line or lines now or hereafter to be constructed on said right of way strip." Nowhere else does the petition or condemnation order suggest that VELCO contemplated the construction of *two* or more parallel rows of poles and wires within the easement for the Queen City Tap Line or any other power project. It is more reasonable, therefore, to interpret the reference to "lines" as simply a means of addressing the possibility that the power line may need to be replaced in the future or that additional wires may be added to the existing poles. Even if this were not the case, however, it would suggest at most an ambiguity in the meaning of the condemnation order inconsistent with the granting of summary judgment.

¶ 23. The purpose of a taking necessarily defines its scope, and that purpose — as noted — cannot be understood solely by

looking at easement language in isolation. See *Howard v. United States*, 964 N.E.2d 779, 782 (Ind. 2012) ("[T]he purpose for which the property is acquired, either through proscription or condemnation, determines the scope of the easement, and the holder of the easement cannot impose a different or extra burden upon the landowner.") (citation omitted). Viewed in context, it is plain that the Farrell easement was taken specifically to accommodate "an electric transmission line" for a discrete power project, and it is equally plain that the compensation award reflected the limited nature of that objective. As one might expect of a single row of poles and wires running down the center of 75-foot wide easement, the award was solely for the value of "the property taken" rather than for "any impairment to the value of the remaining property or consequential damages." Obviously, no consideration was given to the possibility of a second row of poles and attached wires to accommodate another ambitious power project some thirty years later or to the impact that a second power line within the same corridor might have on the remaining property.

¶ 24. Where — as here — a new use is consistent with the general nature of an existing easement, the burdened estate may nevertheless be entitled to compensation if it is more onerous than originally contemplated. See, e.g., *Minot v. United States*, 546 F.2d 378, 381 (Ct. Cl. 1976) (recognizing that, where local power agency installed higher and wider transmission towers in place of existing line within easement owned by United States, power agency could be "held to account for an inverse condemnation" in overburdening plaintiffs' property, although there was no basis for holding United States liable); *Grimes v. Va. Elec. & Power Co.*, 96 S.E.2d 713, 714 (N.C. 1957) (holding that placement of additional lines and cross-arms on existing power poles by second power company imposed additional burden on easement entitling landowner to compensation); *City of Sweetwater v. McEntyre*, 232 S.W.2d 434, 437 (Tex. Civ. App. 1950) (holding that, although landowner was previously compensated for street construction, "[t]he lowering of the [street] grade imposed an additional burden upon [landowner's] property from that contemplated when the street was dedicated for which she is entitled to compensation"); see generally 3 J. Sackman, Nichols on Eminent Domain § 9.04[2][f], at 9-91 (2006) ("If the use is more onerous, the owner is entitled to recover compensation for the increase in the burden only.") and § 9.02[11][c], at 9-45–9-46 (noting distinction between

cases involving uses that impose additional servitude and those "requiring compensation for damage to property, when the damage claimed arises out of a new or increased use of an existing easement").

¶ 25. Farrell should be permitted to demonstrate any direct or consequential damages to his property resulting from the additional line not encompassed within the previous condemnation award. Indeed, Farrell alleged that the distinct array of the additional poles and wires, their greater height, and the closer proximity of the two lines of poles to his remaining property resulted in a diminution of the value of the remaining property not contemplated by the original taking. The majority avers that Farrell "produced no evidence" of additional burden and consequently "has not shown" that the additional line "requir[ed] further compensation." *Ante,* ¶ 15. The parties here deferred discovery, however, pending a decision on VELCO's summary judgment claim that the additional line was authorized by the original condemnation order. The trial court, having determined that the original condemnation order did authorize the additional line, "also conclude[d] that VELCO's use of the easement does not amount to an overburdening." Nevertheless, as noted, the fact that a power line falls within the general purpose of the easement does not bar Farrell from showing that the installation of a second line imposed an additional burden entitling him to compensation. Accordingly, I would reverse the summary judgment, and remand for further proceedings on this issue.

¶ 26. I am authorized to state that Justice Skoglund joins this concurrence and dissent.