NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2019 VT 21

No. 2018-165

| | |
|---|---|
| State of Vermont Agency of Natural Resources | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Washington Unit, |
| | Civil Division |
| | |
| Parkway Cleaners et al. | December Term, 2018 |

Mary Miles Teachout, J.

Thomas J. Donovan, Jr., Attorney General, and Nicholas F. Persampieri, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

R. Bradford Fawley, Bruce C. Palmer and Timothy C. Doherty, Jr., Brattleboro, for Defendants-Appellants Richard S. Daniels and Hazen Street Holdings, Inc.

PRESENT: Skoglund, Robinson and Eaton, JJ., and Dooley, J. (Ret.), and Morris, Supr. J. (Ret.), Specially Assigned

¶ 1. **EATON, J.** This matter arises from a trial court order finding defendant-appellant Richard Daniels liable for the release of hazardous waste on his property, granting summary judgment in favor of the State, and issuing an injunction compelling defendant to investigate and conduct remedial action on the property site. On appeal, defendant contests the award of summary judgment to the State and the scope of the injunction ordered by the court, and he contends the court erred in denying his motion to revisit his statute-of-limitations defense. We affirm.

¶ 2. The trial court considered the proceedings at issue in two phases, first addressing the parties' motions for summary judgment and later addressing the issue of remedies. The facts, based

on the undisputed facts before the court during the summary-judgment proceedings and the factual findings later made by the court during the hearing on damages and injunctive relief, are as follows. Parkway Cleaners was a dry-cleaning business in Hartford, Vermont from the late 1970s to the late 1980s. Perchloroethylene (PERC) was a chemical used in dry-cleaning operations at the time and is now a known human carcinogen and hazardous-waste material. At some point, PERC was dumped at the Parkway Cleaners site or released from the dry-cleaning equipment. The State first became aware of contamination problems in the area in 1987. In 1989, the State found PERC on a property adjacent to the Parkway Cleaners property. From 1987 until 2006, the Agency of Natural Resources (ANR) attempted to determine the extent of PERC contamination in the area. Defendant purchased the former Parkway Cleaners dry-cleaning facility through a tax sale in 1995. Starting in 2002, ANR communicated with defendant regarding potential PERC contamination on the former Parkway Cleaners property.

¶ 3. In the fall of 2005, the State requested defendant conduct a Phase II environmental assessment for the property, which he did.[1] Sampling results generated from that assessment linked the Parkway Cleaners lot to PERC contamination. The sampling results showed PERC in groundwater, soil, and soil gas—the spaces between the drier soil above the groundwater level. Soil gas sampling results sent to ANR in June 2006 showed high PERC concentrations in soil vapor between six and ten feet underground, which indicated PERC could enter basements of nearby residences and affect indoor air quality, thereby presenting a risk to human health.

¶ 4. The State sent a "first letter" to RSD Trucking (RSD), a company owned by defendant, stating that RSD as owner of the Parkway Cleaners lot was a potentially responsible party. The letter requested that RSD: determine if indoor air at nearby residences was contaminated; determine the extent of contamination of soil, soil gas, and groundwater; and assess

---

[1] A Phase II environmental assessment involves sampling the groundwater, soil, and soil gas and developing the feasibility of a corrective-action plan for cleanup.

potential impacts to sensitive receptors, including basements of nearby buildings, nearby surface water, and any nearby drinking water sources, wetlands, or sensitive ecological areas. The State sent the letter to RSD because it mistakenly believed the property was owned by RSD, rather than defendant. In June 2006, the State learned that defendant owned the property in his individual capacity, notified him of that fact, and informed him that the State was seeking to hold him personally responsible for addressing the PERC contamination. Defendant expressed surprise that he owned the property and stated that he thought the property was owned by RSD.

¶ 5.     In October 2006, defendant conveyed title to the property to Hazen Street Holdings, Inc. (HSH). At the time of the transfer: (1) defendant was president and director of HSH; (2) there was no consideration for the transfer; (3) the property had a listed value of $23,100, and HSH had no other assets; (4) defendant had expressed concern that having to pay for the cleanup might ruin him financially; and (5) HSH had no business records other than the deed to the property and documents related to the investigation and cleanup.[2]  By the fall of 2006, after transferring the property to HSH, defendant stopped cooperating with the State. The State continued efforts to address the indoor-air contamination of nearby residences without defendant. According to the State, PERC remains in the groundwater, soil, and soil gas at the property, and has migrated to nearby properties and, potentially, to the White River. The extent of the PERC contamination is not yet known.

¶ 6.     In July 2010, the State filed a complaint against defendant, asserting that he was liable for the release of PERC on the property. In January 2014, defendant moved for summary

---

[2]  Originally, defendant asserted that he owned the property from 1995 until 2006, when he transferred it to his corporation, HSH. He argued that HSH was liable as the owner of the property, rather than himself. The court held that the standard for piercing the corporate veil was "easily satisfied" under the circumstances and that "[defendant] clearly used HSH as an attempt to evade liability to the State as a current owner under 10 V.S.A. § 6615(a)(1)." On appeal, defendant does not contest the trial court's ruling that he is the current property owner, notwithstanding the transfer to HSH. Accordingly, "defendant" refers to Richard Daniels throughout.

3

judgment, asserting that he was not liable because the State had not demonstrated that there was a release or threatened release of hazardous material during the time defendant owned the property. The State cross-moved for summary judgment and sought injunctive relief requiring defendant to undertake all investigation, removal, and remediation actions necessary to abate the release and threatened release of hazardous materials at the facility and surrounding properties, as well as past-response costs. Although the statute of limitations was listed as an affirmative defense in the answer to the complaint, defendant's counsel at the time did not raise the statute of limitations in response to the State's summary-judgment motion and failed to support the defense with factual materials to show that there was a material issue of fact with respect to the defense or that he should prevail as a matter of law based on undisputed facts.

¶ 7. The court granted the State's motion for summary judgment, holding defendant liable as a current owner under 10 V.S.A. § 6615(a)(1). As to injunctive relief, the court determined that "the State is entitled to an injunction requiring defendant to undertake such further 'investigation, removal and remedial action' as is reasonable and necessary." However, the court did not approve the specific terms of the injunctive relief sought by the State in the summary-judgment ruling, stating that the State "has not provided language for the injunction that is 'specific in terms.'" The court declined to enter summary judgment on past-response costs, permitted discovery on the amount of response costs, and scheduled a hearing "to permit [defendant] to challenge the figures."

¶ 8. In October 2015, a notice of substitution of counsel for defendant was filed, and defendant moved to reopen discovery. In June 2016, the court approved the substitution of counsel and denied the motion for additional discovery. Later in June 2016, defendant moved to reopen the court's summary-judgment ruling in order to pursue the statute-of-limitations defense that had not been pursued by defendant's former counsel. The court denied the motion.

4

¶ 9. The court held a trial regarding the issues of damages and the scope of injunctive relief in April and June 2017. In January 2018, the court issued a written order. On the State's request for injunctive relief, the court ruled that because defendant was liable under § 6615 as a current owner and had not taken the necessary steps to assume his legal responsibilities and investigate the extent of the PERC hazard, the State was entitled "to an order requiring [defendant] to undertake 'remedial actions . . . to mitigate hazard to human health or the environment' " pursuant to 10 V.S.A. § 8221(b)(2). On the State's request for past costs, the court ruled that defendant must reimburse the State for certain response costs related to investigation of the site but denied the State's request for reimbursement of the bulk of its past-response costs. At the court's request, the State submitted a proposed form of judgment and gave defendant the opportunity to file any objections, which he did. Following briefing on the objections, the court entered judgment in the form presented by the State in April 2018. Defendant now appeals to this Court regarding the judgment granted to the State, the final injunction, and the denial of the motion to reopen the summary-judgment determination to allow him to assert his statute-of-limitations defense.

¶ 10. On appeal, defendant argues: (1) that a release or threatened release during the ownership period is required for current-owner liability under 10 V.S.A. § 6615(a)(1); (2) the trial court lacked authority to issue an injunction requiring an investigation; and (3) the court abused its discretion in declining to reopen. The State argues that: (1) defendant failed to preserve his arguments regarding the applicability of § 6615(a)(1) and the scope of the injunction for appeal; (2) even if these arguments were preserved, the plain language of § 6615(a) confers current-ownership liability on defendant and multiple statutes authorize an injunction requiring investigation, including §§ 6615, 6615b, and 8221; and (3) the court did not abuse its discretion in declining to reopen the motion for summary judgment to consider defendant's statute-of-limitations defense.

5

¶ 11.    This Court reviews summary-judgment rulings de novo, applying the same standard as the court applies in the first instance—summary judgment is appropriate if there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. Farrell v. Vt. Elec. Power Co., 2012 VT 96, ¶ 9, 193 Vt. 307, 68 A.3d 1111; V.R.C.P. 56(a). "The party opposing summary judgment is given the benefit of all reasonable doubts and inferences." Farrell, 2012 VT 96, ¶ 9.

¶ 12.    Defendant's first argument raises a question of statutory construction. This Court reviews issues of law or statutory interpretation de novo. In re Village Assocs. Act 250 Land Use Permit, 2010 VT 42A, ¶ 7, 188 Vt. 113, 998 A.2d 712.

¶ 13.    His second argument raises the propriety of an injunction and its terms. We review a grant of injunctive relief for abuse of discretion and "will not set aside factual findings unless there is no credible evidence in the record to support them." Obolensky v. Trombley, 2015 VT 34, ¶ 18, 198 Vt. 401, 115 A.3d 1016. We also review a trial court's decision not to reopen a ruling awarding summary judgment for abuse of discretion. See Bostock v. City of Burlington, 2011 VT 89, ¶ 14, 190 Vt. 582, 30 A.3d 651 (mem.); Fragoso v. Lopez, 991 F.2d 878, 888 (1st Cir. 1993) (explaining that where summary-judgment motion granted, trial court has substantial discretion in deciding whether to reopen proceedings to allow unsuccessful party to introduce new material or argue new theory).

¶ 14.    First, we address defendant's arguments regarding the applicability of 10 V.S.A. § 6615(a)(1). The trial court determined that defendant was liable as the current owner of the former Parkway Cleaners property under § 6615(a)(1). Defendant argues that even though he is the current owner of the property, he is not liable under § 6615(a)(1) because no release or threatened release of PERC occurred on the property during his ownership. He contends that any release of PERC on the property occurred under prior ownership, and therefore the court erred in granting summary judgment in favor of the State. The State asserts that defendant's argument on this point is incorrect

based on the plain language of the statute and that it was not preserved because it was not timely raised in opposition to the State's motion for summary judgment.

¶ 15.    We do not address whether defendant properly preserved his argument regarding his liability as the current owner under 10 V.S.A. § 6615(a)(1) because even if the argument was preserved for appeal, based on our interpretation of the statute we find it to be meritless.  According to the plain language of § 6615(a)(1), as the current owner, defendant was liable for the release of PERC at the property prior to his ownership.

¶ 16.    When construing a statute, our first goal is to effectuate the Legislature's intent. Springfield Terminal Ry. Co. v. Agency of Transp., 174 Vt. 341, 346, 816 A.2d 448, 453 (2002). In doing so, we look first to the plain language of the statute.  Id.  Where the language of the statute is challenged, "we must ascertain legislative intent through consideration of the entire statute, including its subject matter, effects and consequences, as well as the reason and spirit of the law." In re Estate of Cote, 2004 VT 17, ¶ 10, 176 Vt. 293, 848 A.2d. 264.  "All relevant parts of the applicable statutory scheme are to be construed together to create, if possible, a harmonious whole." Id.  We have held that "[r]emedial statutes ought to be liberally construed" to accomplish their remedial purposes.  Wilk v. Wilk, 173 Vt. 343, 346, 795 A.2d 1191, 1193 (2002).

¶ 17.    Section 6615 of Title 10 is part of Vermont's Waste Management Act, which parallels its federal counterpart the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9607, "in many relevant aspects."[3]  See Hardwick Recycling & Salvage, Inc. v. Acadia Ins., 2004 VT 124, ¶ 28, 177 Vt. 421, 869 A.2d 82; see also State v. Howe Cleaners, Inc., 2010 VT 70, ¶ 61, 188 Vt. 303, 9 A.3d 276 (Johnson J., dissenting in part, and concurring in part) ("The purpose and statutory scheme of the [Vermont Waste Management Act], and its federal counterpart [CERCLA], indicate that the remedial goals of these statutes were

---

[3]  Section 107 of CERCLA is codified at 42 U.S.C. § 9607.  We refer to this provision as § 9607 for consistency throughout.

intended to be quite broad and that the exceptions to liability quite narrow."). Section 6615, at issue here, is based on § 9607 of CERCLA and its purpose, like § 9607, is to protect public health and the environment by facilitating the cleanup of hazardous-waste sites. Hardwick Recycling & Salvage, Inc., 2004 VT 124, ¶ 28; see also Carson Harbor Vill. v. Unocal Corp., 270 F.3d 863, 880 (9th Cir. 2001) ("CERCLA was enacted to protect and preserve public health and the environment by facilitating the expeditious and efficient cleanup of hazardous waste sites." (quotation omitted)).

¶ 18. Relevant to our analysis, § 6615(a) outlines four categories of individuals who are liable for the release or threatened release of a hazardous material. It provides that:

> (a) Subject only to the defenses set forth in subsections (d) and (e) of this section:
>
> (1) the owner or operator of a facility, or both;
>
> (2) any person who at the time of release or threatened release of any hazardous material owned or operated any facility at which such hazardous materials were disposed of;
>
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous materials owned or possessed by such person, by any other person or entity, at any facility owned or operated by another person or entity and containing such hazardous materials; and
>
> (4) any person who accepts or accepted any hazardous materials for transport to disposal or treatment facilities selected by such persons, from which there is a release, or a threatened release of hazardous materials shall be liable for:[4]
>
> (A) abating such release or threatened release; and
>
> (B) costs of investigation, removal, and remedial actions incurred by the State which are necessary to protect the public health or the environment.

Id. § 6615(a) (emphases added). The statute defines "release" as follows:

---

[4] The parties agree that the foregoing underlined language is part of § 6615(a), rather than solely part of § 6615(a)(4), so that the language applies to each of the four divisions of § 6614(a). We agree with that construction.

8

"Release" means any intentional or unintentional action or omission resulting in the spilling, leaking, pumping, pouring, emitting, emptying, dumping, or disposing of hazardous materials into the surface or groundwaters, or onto the lands in the State, or into waters outside the jurisdiction of the State when damage may result to the public health, lands, waters, or natural resources within the jurisdiction of the State.

Id. § 6602(17).

¶ 19.    Based on the language of § 6615(a)(1), defendant was liable for the release of PERC at the former Parkway Cleaners property because he was the property's current owner, even though the release may have occurred prior to his ownership.  The language of the statute is clear—unless one of the defenses set forth in subsections (d) or (e) apply, "the owner or operator of a facility, or both . . . from which there is a release or a threatened release of hazardous materials shall be liable." Id. § 6615(a)(1).  The language of subsection (a)(1) confers liability for the release of hazardous materials solely based on ownership of the property.  The only exceptions to this liability are outlined in subsection (d), which provides for unanticipated circumstances such as an "act of God" or "act of war," and subsection (e), which protects from liability "innocent purchasers" who, after diligent investigation, took possession of the property without knowledge of contamination.  The Legislature specified that current owners are liable for the release of hazardous waste on their properties, outlined clear exceptions to this rule, and did not narrow liability to a certain timeframe (such as ownership "at the time the release occurred," cf. § 6615(a)(2)).  Thus, the plain language of § 6615(a)(1) makes current owners strictly liable for the release or threatened release of hazardous materials on their property, whether it occurred under their ownership or not, absent the unanticipated circumstances outlined in subsection (d) or the applicability of the innocent-purchaser defense under subsection (e).  As discussed below, we do not find the use of the term "from which there is a release or threatened release" to require a concurrence with ownership of the property.

¶ 20.    The statutory scheme and purpose behind § 6615, as well as interpretations of § 6615's nearly identical federal counterpart § 9607, lend further support to our interpretation.

9

¶ 21. First, we compare subsections § 6615(a)(1) and (a)(2). Section § 6615(a) confers liability upon four categories of persons. As we discussed above, subsection (a)(1) of § 6615 attributes liability to the current owner or operator of a facility from which there is a release or threatened release of hazardous materials. In contrast, subsection (a)(2) ascribes liability to "any person who at the time of release or threatened release of any hazardous materials owned or operated any facility at which such hazardous materials were disposed of." Subsection (a)(2) demonstrates that the Legislature knew how to narrow liability to persons with ownership "at the time of release," yet elected not to include such limiting language in subsection (a)(1). This further supports our conclusion that the Legislature intended to attribute per se liability to current owners, subject to the defenses outlined in § 6615(d) and (e).

¶ 22. Next, we consider the language of § 6615(a)(1) in the context of subsection (e), the innocent-purchaser defense. Subsection (e) provides that:

> Any person who is the owner or operator of a facility where a release or threatened release existed at the time that person became owner or operator shall be liable unless he or she can establish by a preponderance of the evidence, based upon a diligent and appropriate investigation of the facility in conformance with the requirements of section 6615a of this title, that he or she had no knowledge or reason to know that the release or threatened release was located on the facility.

10 V.S.A. § 6615(e) (emphasis added).

¶ 23. The innocent-purchaser defense provides a narrow exception to subsection (a)(1)'s strict liability rule. It explains that an owner who takes possession of a property with a preexisting release of hazardous waste shall not be liable if that person diligently investigated the property and had "no knowledge or reason to know" that a release occurred. Id. The Legislature carved out this narrow exception to liability for purchasers who, in good faith and with diligent investigation, took ownership of a property with a preexisting release of hazardous materials. The specificity of this exception indicates that the Legislature intended § 6615 to otherwise apply broadly to the categories

10

of liable persons listed in § 6615(a)(1)-(4)—including current owners—and further supports our construction of § 6615(a)(1).[5]

¶ 24.   Moreover, if we were to adopt defendant's interpretation of § 6615(a)(1) and hold that current owners are not liable unless a release of hazardous waste occurred on the property during their ownership, we would render § 6615(e)'s innocent-purchaser defense meaningless because current owners would never be liable for releases that occurred before they assumed ownership.  When construing statutory provisions, we presume that the Legislature "inserted [the statutory language] advisedly, and with intent that it should be given meaning and force," and we will not construe the language "in a way that renders a significant part of it pure surplusage." Payea v. Howard Bank, 164 Vt. 106, 107, 663 A.2d 937, 938 (1995) (quotation omitted); Vt. State Colls. Faculty Fed'n v. Vt. State Colls., 138 Vt. 451, 455, 418 A.2d 34, 37 (1980).  We refuse to apply defendant's construction of § 6615(a)(1).

¶ 25.   Finally, interpretations of CERCLA provision § 9607, which § 6615 parallels in many respects, support our construction of § 6615(a)(1).  This Court has recognized that Vermont's Hazardous Waste Act "largely tracks its federal precursor, CERCLA." Howe Cleaners, Inc., 2010 VT 70, ¶ 16.  "Thus, we look to interpretation and application of the comparable federal [provisions] for guidance in interpreting our own provision."  Id.  Like § 6615(a), § 9607(a) of CERCLA provides:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—
>
> (1) the owner and operator of a vessel or a facility,
>
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

---

[5]  Although defendant initially listed § 6615(e) as an affirmative defense in his response to the State's complaint, on appeal defendant does not argue, and we do not consider, whether he qualifies for the innocent-purchaser defense.

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, <u>from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for</u> . . . .

42 U.S.C. § 9607(a) (emphases added).

¶ 26.   Notably, courts construing § 9607 similarly conclude that current owners are liable when a release or threatened release occurred on the property.   See, e.g., <u>Tanglewood E. Homeowners v. Charles-Thomas, Inc.</u>, 849 F.2d 1568, 1572 (5th Cir. 1988) (explaining § 9607(a)(1) imposes strict liability on current owners of any site where a release of toxic substance has occurred); <u>New York v. Shore Realty Corp.</u>, 759 F.2d 1032, 1043-44 (2d Cir. 1985) ("[S]ection 9607(a)'s structure is clear.   Congress intended to cover different classes of persons differently. . . . Prior owners and operators are liable only if they owned or operated the facility 'at the time of the disposal of any hazardous substance'; this limitation does not apply to current owners.").

¶ 27.   Defendant argues that § 6615's use of the present tense in the phrase "the owner . . . of a facility . . . from which there <u>is</u> a release shall be liable" demonstrates the Legislature's intent that current owners are liable only for releases that occur during their possession.   We find this argument unpersuasive considering the statutory scheme and analysis outlined above.   Moreover, while this Court has not addressed the issue to date, other courts addressing CERCLA § 9607 read the phrase "from which there <u>is</u> a release, or a threatened release" in that provision as requiring only that a release or threatened release "has occurred."   See <u>Nw. Mut. Life Ins., v. Atl. Research Corp.</u>, 847 F. Supp. 389, 395 (E.D. Va. 1994) ("[T]o establish a prima facie case of liability in a CERCLA cost recovery action, a plaintiff must prove . . . that a release

or threatened release <u>has occurred</u> on the site . . . [and] that each defendant falls within one of the four categories of 'liable parties' set forth in 42 U.S.C. §9607(a)." (emphasis added)); see also <u>Freeman v. Glaxo Wellcome, Inc.</u>, 189 F.3d 160 (2d Cir. 1999) (same); <u>Amoco Oil Co. v. Borden, Inc.</u>, 889 F.2d 664, 668 (5th Cir. 1989) (same). This construction is equally applicable in the context of § 6615—a person is liable under § 6615 if the person falls into one of the four categories of liable parties set forth in § 6615(a); a release or threatened release <u>has occurred</u> on the site; and the defenses under § 6615(d) and (e) do not apply. Defendant satisfies this test. He is a current owner under § 6615(a)(1); a release occurred on his property, in other words there is a release on that property; and the defenses under § 6615(d) and (e) are inapplicable.

¶ 28. We conclude defendant is liable under § 6615 for the release of PERC on his property and affirm the trial court on this issue.

¶ 29. Next, we consider whether the court abused its discretion in issuing the injunctive order compelling defendant to investigate and remediate the PERC contamination. The trial court found that the contamination problems at the property were not fully remediated and that more investigation into the contamination was necessary. Additionally, the court found that "[defendant] ha[d] not assumed his legal responsibility under 10 V.S.A. § 6615, and show[ed] no signs of doing so." The court concluded that the State was entitled, pursuant to 10 V.S.A. § 8221(b)(2), to an order requiring defendant to undertake remedial actions to mitigate the potential hazard to human health and the environment. Prior to issuing the final order, the court asked the State to submit a new proposed order and allowed defendant the opportunity to object. Though defendant objected to the broad scope of the injunction, the court concluded that to "the extent that the injunction must lack specificity that otherwise would be required of a typical injunction, that is due to the nature of defendant's statutory obligations and his failure to satisfy them. The purpose of the mandatory injunction is to require him to comply with his statutory obligations" under §§ 6615 and 6615b.

¶ 30. The court's final order largely tracked the requirements of § 6615b. In relevant part, it ordered that defendant "perform site investigation and corrective action, compliant with 10 V.S.A. § 6615b and all requirements of the July 2017 Investigation and Remediation of Contaminated Properties Rule (IROCP Rule) to address contamination from release of hazardous materials at and from the site, including all locations potentially affected by the site." The injunction also specified that defendant must provide ANR with a site investigation work plan and implement the plan, submit the investigation report to ANR, provide a corrective-action plan to ANR and implement such plan, and submit a corrective-action-completion report. "[I]n the event of the discovery of any previously unknown condition at the Site or the receipt of any new information concerning the extent of risk or hazard or environmental impact presented at the site," the injunction stated that ANR "shall retain the right to require implementation by [defendant] of different or additional corrective action measures in connection with the Site." Finally, the order explained that the court "shall retain jurisdiction over the subject matter of this action and the parties . . . to enforce the terms and conditions of this Order; . . . to resolve any disputes between the parties concerning the application of the Order; and . . . to provide further relief as may be appropriate."

¶ 31. On appeal, defendant contends the court abused its discretion in issuing the order because: (1) neither § 6615 nor § 8221 authorize the court to issue an injunction requiring defendant to perform an investigation and the State's remedy under the statutes is limited to recovery of the costs of its own investigation; and (2) the injunction is impermissibly broad and nonspecific, and it improperly incorporates documents and directives from outside the "four corners" of the order.[6]

---

[6] The State contends that defendant did not preserve his challenge to the trial court's authority to issue an injunction of this scope because defendant failed to raise this issue in response to the State's cross motion for summary judgment. We disagree. The trial court addressed the issue of injunctive relief in its January 2018 order. In the order, the court explained that 10 V.S.A. § 8221(b)(2) authorizes the court to issue "an order requiring performance" and ordered the State to submit a new proposed order, to which "[Defendant's] attorney shall have 14 days to file any objection." Defendant's attorney did so. In April 2018, the trial court issued its final order and responded to defendant's objections that "the proposed injunction is flawed because it refers to

¶ 32. Vermont Rule of Civil Procedure 65(d) provides that every order granting an injunction "shall be specific in terms" and "shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." "These prerequisites are designed to protect those who are enjoined by informing them of what they are called upon to do or refrain from doing in order to comply with the injunction or restraining order." Am. Trucking Ass'ns, Inc. v. Conway, 152 Vt. 363, 374, 566 A.2d 1323, 1330 (1989) (quotation and alteration omitted). Based on the statutes providing corrective action procedures and civil enforcement for violations of § 6615, we conclude that the court did not abuse its discretion or exceed its authority in issuing the injunctive order at issue.

¶ 33. Three key provisions under Title Ten of Vermont's statutes, §§ 6615, 6615b, and 8221, outline the court's authority to address violations of § 6615. First, § 6615 explains that a person liable under that provision "shall be liable" for "abating such release or threatened release" and states that "[i]n the event that the responsible person or persons <u>fails to act</u> in a timely manner <u>to take the necessary removal and remedial actions</u>, the Secretary may take such actions, order the responsible person or persons to act, <u>or seek a court order requiring such actions</u>." 10 V.S.A. § 6615(a), (b) (emphases added). This language clearly authorizes courts to order a responsible party, as designated by § 6615(a), to "take the necessary removal and remedial actions."

¶ 34. Section 6615b, which expressly addresses corrective-action procedures for individuals liable under § 6615, further supports this scheme by outlining the types of actions the Legislature anticipated as "removal and remedial actions" under § 6615. Section 6615b provides that "[a]ny person who is determined to be liable for the release or threatened release of a hazardous

---

documents (rules) outside its four corners and is too nonspecific," "neither 10 V.S.A. §§ 6615 or 8221 authorize injunctive relief, and § 8221 is unconstitutionally vague." The court declined to rule on those issues in any detail and was not persuaded that there was any need to modify the proposed judgment filed by the State. Because the court provided defendant with the opportunity to brief this issue and was able to review and rule on defendant's objections, we conclude that the issue regarding the scope and specificity of the injunction is preserved and address it here.

15

material as established in section 6615 of this title <u>shall take all of the following actions to mitigate the effects of the release</u>," including: submitting a "work plan for investigation of the contaminated site"; <u>performing a site investigation</u>; submitting and implementing a corrective action plan; and "submit[ting] to the Secretary all investigative, corrective action, and monitoring reports, including all analytical results . . . as they become available." (Emphases added.)

¶ 35.    Section 8221 of Title Ten provides for civil enforcement of § 6615 and § 6615b. It states that "[t]he Secretary . . . may bring an action in the Civil Division of the Superior Court to enforce the provisions of law specified in subsection 8003(a) of this title, to ensure compliance, and to obtain penalties in the amounts described in subsection (b) of this section."[7]   To this end, § 8221(b) explains that "the court may grant <u>temporary and permanent injunctive relief</u>, and may": "enjoin future activities"; "<u>order remedial actions</u> to be taken to mitigate hazard to human health or the environment"; "order the design, construction, installation, operation, or maintenance of facilities designed to mitigate or prevent a hazard to human health or the environment or designed to assure compliance"; fix and order compensation for destroyed or damaged property; order reimbursement for governmental expenditures; and "[l]evy a civil penalty as provided in this subdivision." (Emphases added.)  The panoply of options for the court when enforcing § 6615 demonstrates that the court is authorized to utilize various methods to remediate hazardous-waste releases—including an order compelling performance of a site investigation and follow-up actions.

¶ 36.    Together, these three provisions, §§ 6615, 6615b, and 8221, create a scheme delegating broad authority to the courts to order the investigation and remediation of hazardous-waste spills.  Here, the court order, which required defendant to conduct an investigation and

_____

[7]   Sections 6615 and 6615b are included under § 8003(a) because they are provisions of Title 10, chapter 159.  See 10 V.S.A. § 8003(a)(12) (stating that "[t]he Secretary may take action under this chapter to enforce the following statutes and rules," including "10 V.S.A. chapter 159, relating to solid waste, hazardous waste, and hazardous materials").

address PERC contamination at the site, progressively tracking the procedures specified in § 6615b, was clearly within the court's authority as outlined by the statutory provisions.

¶ 37. Defendant argues that injunctive orders may only operate as a <u>restraint</u> on certain acts and may not <u>compel</u> the performance of affirmative actions, as the order in this case does. We reject this proposition. The statutory language outlined above squarely authorizes the court to order remedial actions and specifies the steps that a party liable under § 6615 must take to address hazardous-waste contamination. Therefore, the court was authorized by statute to issue an injunctive order with mandatory actions for defendant that align with § 6615b's civil enforcement requirements.

¶ 38. Defendant further argues that if the court has the authority to order an investigation of the site, then the State must prove such remedial steps are "necessary to protect public health or the environment." This is an incorrect interpretation of the interaction between § 6615 and § 6615b. If a person is liable for the release of hazardous materials under § 6615(a)(1), then § 6615b states that that person "shall take all of the following actions to mitigate the effects of the release," including the development of a work plan for and performance of a site investigation. However, § 6615b does not require the State to prove such steps are "necessary to protect public health or the environment." Rather, § 6615(b) authorizes the State to "take the necessary removal and remedial actions" in the event that the responsible party fails to do so in a timely manner, and § 6615(a)(4)(B) requires persons liable under § 6615 to reimburse the State for the "costs of investigation, removal, and remedial actions incurred by the State" when such actions are "necessary to protect the public health or the environment." In sum, § 6615 provides two paths—first, it requires liable parties to conduct remediation efforts at their own expense; alternately, if the liable party refuses to take the necessary actions in a timely manner, § 6615 authorizes the State to take such actions with reimbursement from the liable party. Here, defendant's argument conflates the two. We clarify that § 6615b's requirement that a defendant take remedial actions pursuant to § 6615b is separate

17

from, but related to, his obligation under § 6615(a)(4)(B) to reimburse the State for the costs of "necessary actions" it might be required to undertake to remediate a site due to a defendant's failure to act in a timely manner.

¶ 39. Finally, regarding the specificity of the order, defendant argues that the court's injunction constitutes an abuse of discretion because it: is impermissibly vague and nonspecific, contrary to Vermont Rule of Procedure 65(d); incorporates the IROC Rules by reference; and requires that defendant engage in a "collaborative process" with the State and other stakeholders— "nonparty outsiders, over whom the trial court would have no control or authority"—to determine the course of action. Considering the clear statutory enforcement scheme for remediating hazardous-waste sites outlined by the Legislature, we find these arguments unpersuasive.

¶ 40. As explained above, §§ 6615, 6615b, and 8221 specifically authorize courts to utilize a variety of tools to address hazardous-waste spills, while Rule 65 outlines broad requirements for injunctions more generally. In this case, where the Legislature has outlined a statutory scheme for remediating hazardous-waste spills, "we bear in mind the general rule of statutory construction that a specific statute governs over a more general one." See, e.g., In re Route 103 Quarry, 2007 VT 66, ¶¶ 3-5, 182 Vt. 569, 933 A.2d 189 (mem.) (quotation omitted) (explaining that statute expressly "control[ling] and establish[ing] discretionary stays in appeals not only to, but also from, the Environmental Court" governed appellant's request for stay from Environmental Court rather than "general civil rule of procedure" regarding automatic stays).

¶ 41. Even holding the injunction to Rule 65's standards, it does not run afoul of the rule's requirements. "[T]he mere fact that the injunction is framed in language almost identical to the statutory mandate does not make the language vague." United States v. Miller, 588 F.2d 1256, 1261 (9th Cir. 1978). The purpose of the injunction is to notify defendant of his obligations under the order. Am. Trucking Ass'ns, Inc., 152 Vt. at 374, 566 A.2d at 1330. Here, the court's order sets out specific requirements outlining the steps defendant must take and the benchmarks he must

18

meet to satisfy the order and his statutory obligations under §§ 6615 and 6615b. Incorporating published ANR regulations, such as the IROC Rules, and notifying defendant of his obligation to cooperate with the State and ANR do not undermine the specificity of the order or make defendant's obligations less clear—to the contrary, these additions help clarify the process. The door remains open for defendant to petition the court for modification or interpretation of the order to ensure he is not harmed due to ambiguity. "If the decree remains ambiguous after these efforts, the defendant cannot be held in contempt for violating it." United States v. Apex Oil Co., 579 F.3d 734, 740 (7th Cir. 2009). Accordingly, defendant has recourse for modifying the order and protecting himself from any lack of specificity.

¶ 42. While not binding upon this Court, federal caselaw addressing injunctions in the context of complex environmental or regulatory policy schemes supports our conclusion that the court's injunctive order here was not impermissibly broad and did not run afoul of Rule 65(d).[8] For example, in Apex Oil, the court held that under the circumstances an injunction requiring

---

[8] See Apex Oil, 579 F.3d at 739 (upholding mandatory injunction and noting that broad decree ordering clean-up of contaminated site under CERCLA "resembles one of the 'regulatory decrees' that federal courts issue when they take over the running of a school system or other complex public institution that has failed to comply with federal law in one respect or another"); Envtl. Def. Fund, Inc. v. Lamphier, 714 F.2d 331, 338 (4th Cir. 1983) (holding permanent injunction requiring defendant to open his property to officials at "reasonable times" did not lack specificity under Rule 65(d) because "[t]he open-ended duration of the injunction is justified by [defendant's] prior lack of cooperation with authorities. Until such time as [defendant] demonstrates abiding compliance with hazardous-waste laws, his farm should remain subject to monitoring by health officials"); Miller, 588 F.2d at 1261 ("[T]he mere fact that the injunction is framed in language almost identical to the statutory mandate does not make the language vague."); Idaho Conservation League v. Atlanta Gold Corp., 879 F. Supp. 2d 1148, 1164 (D. Idaho 2012) (explaining that "a broadly drafted injunction ordering [defendant] to come into compliance by a date certain, but not directing the specific steps it must take to achieve compliance, is best suited to the facts presented in this litigation"); cf. Francisco Sanchez v. Esso Standard Oil Co., 572 F.3d 1, 4 (1st Cir. 2009) (partially affirming and applauding portion of court's preliminary injunction compelling defendant to conduct "comprehensive site assessment" as in line with court's broad authority to enforce environmental protection provisions, while overturning elements of preliminary injunction that inappropriately addressed merits of liability); Petrello v. White, 533 F.3d 110, 115-116 (1st Cir. 2009) (explaining that order for specific performance that merely referenced contract and did not require specific acts to be completed by set timeframe did not comport with Rule 65(d) or qualify as injunction, and was not appealable as such).

cleanup of a contaminated site need not provide the same level of specificity as a typical injunction. 579 F.3d at 739.  Similar to the scenario at hand, the Apex Oil court rejected a Rule 65(d) challenge to the order's specificity and upheld injunctive relief requiring defendant to investigate, monitor, design, and implement measures to abate hydrocarbon contamination.  Id. at 739.  In doing so, the court noted that:

> The aims of Rule 65(d) are to minimize the occasion for follow-on proceedings to the issuance of an injunction and to protect defendants from being held in contempt for failure to follow a directive that was a trap because of its ambiguity.  But the cases that insist on strict compliance with an inflexible interpretation for the rule must be understood as ones in which such compliance is feasible and desirable.  A degree of ambiguity is unavoidable in a decree ordering complicated environmental cleanup.

Id. at 740 (citations omitted).

¶ 43.  We agree with the court that in this situation, as in Apex Oil, "[t]o specify the detail of the project" in the order would be impracticable and would "either impose impossible rigidity on the performance of the cleanup or more likely require constant recourse to the . . . judge for interpretation or modification of the decree."  Id. at 739.

¶ 44.  In sum, the court's order did not constitute an abuse of discretion or run afoul of Rule 65(d)'s protections.  We affirm the order.

¶ 45.  Finally, we consider whether the court abused its discretion in denying defendant's statute-of-limitations argument.  Defendant raised the statute-of-limitations issue as an affirmative defense in his answer to the State's complaint.  However, defendant did not assert that the statute had run either in opposition to the State's summary-judgment motion or in a motion for summary judgment on his own behalf.  The trial court granted summary judgment in favor of the State without considering a statute-of-limitations argument because defendant did not properly present it in a timely manner.  Therefore, he waived this argument.  Years later, defendant brought forward an argument asserting the State's claim was barred by the statute of limitations when he sought to

20

reopen and contest the grant of summary judgment in 2016. Defendant cannot use a motion to reconsider to raise a "wholly new theory" that should have been raised before the court granted summary judgment. See Campbell v. Stafford, 2011 VT 11, ¶ 17, 189 Vt. 567, 15 A.3d 126 (explaining that court can dismiss motion to reconsider without addressing merits when it raises a wholly new legal theory). Because defendant failed to preserve his statute-of-limitations challenge, the court did not abuse its discretion in declining to reopen and resolve the matter, and we do not address whether the State's claim was barred by the statute of limitations.

Affirmed.

FOR THE COURT:

_____
Associate Justice